UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NICHOLAS FUENTES, | : | |
| | : | |
| *Plaintiff,* | : | Dkt. No.: 1:21-cv-03106 |
| v. | : | |
| | : | |
| JOSEPH R. BIDEN, JR., | : | |
| MERRICK GARLAND; | : | |
| CHRISTOPHER WRAY; ANTONY | : | |
| BLINKEN; ALEJANDRO MAYORKAS; | : | |
| LOUIS DEJOY; DAVID P. PEKOSKE; | : | |
| STEVE DICKSON; LLOYD AUSTIN; | : | |
| THE TRANSPORTATION SECURITY | : | |
| ADMINISTRATION OF THE UNITED | : | |
| STATES, | : | |
| | : | |
| *Defendants.* | : | NOVEMBER 23, 2021 |

*"Those who would give up essential Liberty, to purchase a little temporary Safety, deserve neither Liberty nor Safety."* – Benjamin Franklin.

## COMPLAINT

1. This is an action to bring an end to the systematic violation of United States citizens' First, Fifth, Ninth, and Fourteenth Amendment's rights by the Defendants – a course of conduct that has included declaring them presumptively dangerous based on constitutionally protected free speech and associations and denying them the fundamental constitutional right to travel through secret proceedings at which they have no opportunity to be heard.

## PARTIES

2. The Plaintiff, Nicholas Fuentes, is an American journalist, political commentator, activist, and businessman. He has hosted two national political conferences under his brand, America First Political Action Conference (AFPAC), and he hosts an alternative media broadcast, *America First with Nicholas J. Fuentes*.

3. The Defendant, Joseph R. Biden, Jr., is the current president of the United States of America. He is sued in his official capacity only.

4. The Defendant, Merrick Garland, is the current Attorney General of the United States of America, He is sued in his official capacity only.

5. The Defendant, Christopher Wray, is the current director of the Federal Bureau of Investigation (FBI). He is sued in his official capacity only.

6. The Defendant, Antony Blinken, is the current Secretary of State for the United States of America. He is sued in his official capacity only.

7. The Defendant, Alejandro Mayorkas, is the current Secretary of Homeland Security for the United States of America. He is sued in his official capacity only.

8. The Defendant, Louis DeJoy, is the current Postmaster General for the United States of America. He is sued in his official capacity only.

9. The Defendant, David P. Pekoske, is the current Administrator of the Transportation Security Administration (TSA) for the United States of America. He is sued in his official capacity only.

10. The Defendant, Steve Dickson, is the current Administrator of the Federal Aviation Administration (FAA). He is sued in his official capacity only.

11. The Defendant, Lloyd Austin, is the current Secretary of Defense for the United States of America. He is sued in his official capacity only.

12. The Transportation Security Administration of the United States is an agency of the United States Department of Homeland Security responsible for administering security for air travel in the United States.

## JURISDICTION

13. This Court has jurisdiction under 5 U.S.C. § 702 and 28 U.S.C. §§ 1331 and 2201, and venue is proper under 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

### *Historical Background.*

14. Prior to the September 11, 2001 terrorist attack, the United States had a list of 16 people that it deemed to present a specific known or suspected threat to aviation. It classified these people as "no transport."

15. In the aftermath of the September 11, 2001 terrorist attacks, the list ballooned to 400 people by November 2001. The United States government then entrusted the list to the FAA.

16. December 2001 saw the FAA create a classification scheme in the form of two lists: the "No Fly List" and the "Selectee List." The "No Fly List" denied those on it air transport. The "Selectee List" mandated that those on it were to be subjected to more rigorous searches at airports.

17. Even though the lists ballooned to more than 70,000 names by April 2005, the United States denied its existence.

18. Things came to a head in October 2006 when CBS News' 60 Minutes discovered the existence of the No Fly List program and revealed that 44,000 names were on a list that it had obtained.

19. Despite this revelation, the United States has still maintained the utmost secrecy over the administration of its "No Fly List" program.

***Mechanics Of The No Fly List's Administration.***

20. Responsibility for administering the No Fly List now belongs to the FBI's Terrorist Screening Center.

21. Even though the FBI is officially responsible for the administration of the No Fly List, the Terrorist Screen Center and the No Fly List program is a multi-agency venture, including representatives from the FBI, the Department of State, the Department of Defense, the Department of Homeland Security, the United States Postal System, the Transportation Security Administration, and the Federal Aviation Administration.

22. Upon information and belief, each of these agencies and government departments maintains its own criteria on how to designate American citizens as terrorists and place them on terrorist watchlist that are then assembled into the United States' broader terrorism watchlist, which it once called the "Terrorist Identities Datamart Environment" ("TIDE") database.

23. The agencies' criteria for placing a person in the TIDE database are secretive and change constantly to meet federal officials' predilections. They, however, bear a loose affiliation with the "reasonable suspicion" standard, which allows the Defendants to bar someone from travel on the mere suspicion that they have remote links to terrorism or terrorist activities.

24. The agencies then each independently and secretly maintain their own criteria for assigning an American citizen to the No Fly List

25. After the No Fly List is assembled, enforcement falls to the TSA, which secretly implements the program as part of its normal security operations at airports.

26. None of the federal agencies involved in administering the No Fly List inform a person whether their name has made its way onto the No Fly List. Instead, a person finds out by accident and only after battling the Department of Homeland Security and other federal agencies for information.

27. When a person is denied the ability to travel by air, they are often left to guess as to the reason why. Petitioning the federal government for relief is even more daunting as the federal government does not provide anyone with information on why they are not permitted to fly. Instead, a person must submit a request to the Department of Homeland Security's Traveler Redress Inquiry Program (TRIP). The Department then responds with a letter either granting or denying the request. Denials may or may not come with explanations or confirmations, thus leaving a person in perpetual suspense about whether they are on the No Fly List and why.

### *Fuentes Receives Large Cryptocurrency Donations.*

28. Since February 2020, the Plaintiff, Nicholas Fuentes, has maintained a bitcoin wallet to receive donations from people who listened to his various media projects, including his DLive video streaming channel.

29. On August 16th, 2020, Fuentes received a deposit of 0.135 BTC or about $1,605.52 from an anonymous donor. Later that same day, the donor contacted him by email, suggested that he advertise his bitcoin wallet more frequently, provided him some security tips about storing bitcoin, and told him that the donation was in honor of Fuentes' upcoming birthday.

30. Fuentes responded a few days later, thanking the donor for the gift and commenting on the advice that the donor gave him.

31. On December 7th, 2020, the same donor made another anonymous donation to Fuentes in the amount of 13.5 bitcoin or approximately $259,087.00. Later that day, the donor contacted Fuentes and confirmed the donation as being for him and two of his associates.

32. Fuentes responded a few days later, expressing his thanks.

33. On December 16, 2020, Fuentes sold the donated bitcoin and transferred the proceeds to his Bank of America account.

34. In January 2021, media accounts purported to identify the donor as a male, French computer programmer who ran a personal blog. They also reported a December 9, 2020 from the donor's blog that read like a suicide note. A French media outlet called "20 Minutes" later confirmed the authenticity of the suicide note, the donor's identity, and his suicide.

35. Fuentes, however, had no communication with the donor apart from the donations that he received from the donor and the two emails exchanges described above.

### Fuentes' Involvement With "Stop The Steal" Rallies.

36. Following the 2020 presidential election, Fuentes attended and spoke at "Stop The Steal Rallies" in support of former President Donald J. Trump. At those rallies, Fuentes advocated for state governments to investigate allegations of voter fraud during the 2020 election, and he collaborated with notable political activists such as Ali Alexander and nationally recognized television personality, Alex Jones of Infowars.

37. Fuentes attended rallies in Lansing, Michigan on November 11, 2020; Washington, D.C. on November 14, 2020 and December 12, 2020; Atlanta, Georgia from

November 18 to November 22, 2020; Phoenix, Arizona from November 28 through November 30, 2020; and Harrisburg, Pennsylvania on December 5, 2020. None of these rallies were violent or criminal in any way.

38.     On January 6, 20201, Fuentes went to Washington, D.C. to attend President Donald Trump's "Save America" rally at the Ellipse outside the White House.

39.     Prior to arriving in Washington, D.C., Fuentes had a conversation with Milo Yiannopoulos, a nationally recognized journalist and political commentator, who informed him that the FBI had told him that the January 6, 2021 rally would not be secure.

40.     After President Trump spoke at the Ellipse on January 6, 2021, Fuentes joined his friends and marched to the west side of United States Capitol. There, he remained inside the permitted demonstration area and the designated zone for the media. He took pictures with fans, signed autographs, and socialized. He then delivered a 20-minute speech inside the permitted demonstration area. At no time did he urge the crowd to break the law or engage in violence.

41.     Fuentes then left the protest and returned to his hotel. Approximately two hours later, journalist Nathan Bernard wrote a story claiming that Fuentes had appeared inside the Capitol building and accused him broadcasting a live stream from Speaker Nancy Pelosi's office even though the man in the picture Bernard relied on did not even remotely resemble Fuentes. As a result of Bernard's story, many other journalists and media outlets spread the false report that Fuentes had been in Speaker Pelosi's office.

### *The Federal Government Begins To Target Fuentes.*

42. On January 25, 2021, without notice or warning, the United States Department of Justice froze Fuentes' Bank of America bank account, depriving him of the use of $447,488.05.

43. On February 4, 2021, Fuentes sought assistance from Bank of America on why his account was frozen. They referred him to Justice Department attorneys, Jessica Brooks, Chris Brown, and Jessica Peck.

44. Fuentes then reached out to Attorney Brooks through his counsel. Brooks informed Fuentes' counsel that the United States was investigating him for being on United States Capitol Grounds on January 6th, 2021 and that it would not give him a timeline on when it would unfreeze his assets. She also identified Justice Department attorneys Risa Berkower and Elizabeth Aloi as being involved.

45. Brooks then provided further correspondence to Fuentes, stating that the United States claimed that his funds were tainted and that it would subject them to a civil forfeiture proceeding.

46. On January 27, 2021, the Defendant, TSA, informed Fuentes that it was revoking his participation in the TSA Pre-Check program – a program that allows a person accelerated passage through airport security.

### *The Federal Government Bars Fuentes From Flying.*

47. On April 25, 2021, Fuentes booked an American Airlines flight from Chicago's O'Hare airport to Fort Lauderdale, Florida to attend a press conference with notable national personalities, Laura Loomer, Michelle Malkin, and Lauren Witzke.

48. Fuentes, however, unsuccessfully attempted to check in for his April 25, 2021 flight. When he spoke to customer service for American Airlines, they told him that he did not have clearance to fly and that the decision came from airport security.

49. Undaunted, Fuentes went to the United Airlines terminal and booked a second flight to Florida. When he attempted to check in, he could not. He spoke to United Airlines customer service, which told him that the Defendant TSA was not permitting Fuentes to fly.

50. Fuentes left the airport peacefully and returned home. He then called the TSA and asked if he was on the No Fly List. The TSA agent he spoke with told him that she could not confirm that information but informed him that he could submit a complaint through the Department of Home Security's TRIP system.

51. Fuentes did submit that complaint, and he received the case number 2331500.

52. Fuentes then went to Midway International Airport in Illinois and attempted to book a Southwest Airlines flight to Phoenix, Arizona. The same scene repeated itself. He unsuccessfully attempted to check in so he went to customer service and sought help. After a 30-minute wait, Southwest's customer service told him to go to another area of the airport to ask for clarification. When he could not find that area, he returned to the customer service desk and asked for more help. At that point, the Southwest customer service representative told him that there was no way that he would be allowed to fly that day.

53. Since then, Fuentes has been unable to board an airplane in the United States because the TSA will not permit him to.

## COUNT ONE – VIOLATION OF FUENTES' FIFTH, NINTH, AND FOURTEENTH AMENDMENT RIGHTS TO INTERSTATE TRAVEL

54. Paragraphs 1 through 53 are incorporated herein.

55. The right to interstate travel is a fundamental constitutional right protected by the Fifth Amendment, the Ninth Amendment, and the Fourteenth Amendments to the United States Constitution.

56. The primary purpose of the No Fly List is to completely bar American citizens from traveling by air in the United States, thus impeding their travel throughout the United States.

57. The "No Fly List" maintained by the Defendants bars Fuentes and any similarly situated individual who has the misfortune of ending up on this secret list from traveling within the United States or internationally by the commercial airlines commonly available to the American public.

58. The burden imposed by the "No Fly List" imposes tremendous burdens on Fuentes and other similarly situated individuals' exercise of other fundamental constitutional rights such as the right to freely assemble to petition governments for the redress of their grievances, to freely associate with others, to engage in core political speech on matters of public concern, and to pursue the intimate familial relationships protected by the United States Constitution.

59. The criteria used by the Defendants to place people on the "No Fly List" are hopelessly vague, unchecked by any meaningful judicial or legislative review, and are not narrowly tailored to protect compelling government interests. Upon information and belief, the Defendants use suspicion-based criteria to place individuals on the "No Fly List" instead of an actual risk-based assessment.

60. The Defendants' actions systematically violate American citizens', including Fuentes', Fifth, Ninth, and Fourteenth Amendment rights to interstate travel.

### **COUNT TWO – VIOLATION OF FUENTES' FIFTH AMENDMENT RIGHT TO DUE PROCESS**

61. Paragraphs 1 through 60 are incorporated herein.

62. The Defendants systematically assign American citizens to the No Fly List without any notice or opportunity to be heard, let alone meaningful notice or opportunity to be heard.

63. After American citizens are assigned to the No Fly List, the Defendants never inform them that they are assigned to the list. Instead, the Defendants force American citizens to submit the functional equivalent of an email styled a complaint through a major retailer's customer support contact form to the Department of Homeland Security.

64. Once the Department of Homeland Security receives the complaint, it takes between 6 months and 2 years to process the complaint – during which time the Defendants provide American citizens with no updates and no confirmation that they are on the No Fly List.

65. Upon information and belief, the Department of Homeland Security never confirms whether American citizens have been assigned to the No Fly List or explains the reasons why they were assigned to the No Fly List.

66. Upon information and belief, the Defendants have assigned the Plaintiff, Nicholas Fuentes, to the No Fly List.

67. The Defendants never notified Fuentes that he was assigned to the list. They never provided, and never will provide, him with an opportunity to directly challenge his inclusion on the list or the reasons for his inclusion on the list.

68. The Defendants have been in receipt of Fuentes' complaint for more than 6 months, but they have not given Fuentes a final resolution of it or an update on what they are doing.

69. The Defendants' use of the No Fly List also amounts to the imposition of a criminal sanction with all of the stigma that it imposes.

70. For example, the United States systematically maintains criminal databases to enforce its laws and policies. Inclusion in such a database curtails an American citizen's constitutional rights. For example, federal law prohibits a convicted felon or someone convicted of a misdemeanor crime of domestic violence from owning a firearm. *See* 18 U.S.C. § 922(d). To enforce this law, the United States requires a national criminal background check through the FBI before an American citizen is permitted to purchase a firearm.

71. Similarly, the Defendants directly inform airlines that American citizens may not fly for government reasons even though they do not articulate why.

72. When Fuentes attempted to fly, the Defendants informed the airlines that he attempted to fly with that he could not fly because of government reasons. The airlines then informed Fuentes in front of other customers that he could not fly because the Defendants would not permit him to.

73. Placement on the No Fly List constitutes the Defendants' classification of American citizens as terrorists. It carries with it the presumption of dangerousness similar

to that a felon carries, and it contains no explanation of the underlying facts so that the stigmatized citizen and the public can evaluate the validity of the presumption themselves.

74. Placement on the No Fly List constitutes a denial of a fundamental constitutional liberty interest – the right to travel.

75. The Defendants systematically violate American citizens', including Fuentes', right to procedural due process under the Fifth Amendment.

### COUNT THREE – VIOLATION OF THE FIRST AMENDMENT'S FREE SPEECH CLAUSE

76. Paragraphs 1 through 75 are incorporated herein.

77. Upon information and belief, one of the primary criteria that the Defendants use to place American citizens on the No Fly List is the content of their speech and political actions that can be reasonably construed as speech.

78. The Defendants systematically assign, and have assigned for almost two decades, American citizens, including lawyers, to the No Fly List based on political speech that they do not like and that opposes critical government policies. At no point do the Defendants consider whether the speech is constitutionally protected nor do they provide any safeguard to make such a determination.

79. The Defendants have systematically have placed American citizens on the No Fly List who have opposed critical government policies and actions and have uttered constitutionally protected speech in furtherance of that speech. They have placed American citizens on the No Fly List solely because of their constitutionally protected speech.

80. Upon information and belief, the Plaintiff, Nicholas Fuentes, is an American citizen who has been placed on the No Fly List by the Defendants because of his constitutionally protected political speech and constitutionally protected hyperbole.

81. The Defendants' actions – both systematically and with respect to Fuentes – violate the First Amendment to the United States Constitution.

## COUNT FOUR – VIOLATION OF THE FIRST AMENDMENT'S FREEDOM OF THE PRESS CLAUSE

82. Paragraphs 1 through 81 are incorporated herein.

83. Upon information and belief, one of the primary criteria that the Defendants use to place American citizens on the No Fly List is their activities as journalists.

84. The Defendants systematically assign, and have assigned for almost two decades, journalists to the No Fly List based on commentary, reporting, and journalistic investigations that they do not like and opposes critical government policies, exposes government misconduct, or otherwise embarrasses the United States government. At no point do the Defendants consider whether the journalistic activity is constitutionally protected nor do they provide any safeguard to make such a determination.

85. The Defendants have systematically have placed American journalists on the No Fly List who have criticized government policies, embarrassed the United States and its officials by exposing government misconduct, and reported on matters adverse to what the United States considers its interests. They have placed American journalists on the No Fly List solely because of their constitutionally protected activity as journalists.

86. Upon information and belief, the Plaintiff, Nicholas Fuentes, is an American journalist who has been placed on the No Fly List by the Defendants because of his constitutionally protected activity as a journalist.

87. The Defendants' actions – both systematically and with respect to Fuentes – violate the First Amendment to the United States Constitution.

## **COUNT FIVE – VIOLATION OF THE FIRST AMENDMENT RIGHT TO FREEDOM OF ASSOCIATION**

88. Paragraphs 1 through 87 are incorporated herein.

89. Upon information and belief, one of the primary criteria that the Defendants use to place American citizens on the No Fly List are their political and social associations.

90. The Defendants systematically assign, and have assigned for almost two decades, American citizens to the No Fly List based on their association with political figures, political groups or organizations, social celebrities, and social groups or organizations. At no point do the Defendants consider whether the association is constitutionally protected nor do they provide any safeguard to make such a determination.

91. The Defendants have systematically have placed American citizens on the No Fly List who have associated with political and social figures, groups or organizations that the United States does not like. They have placed American citizens on the No Fly List solely because of their constitutionally protected associations.

92. Upon information and belief, the Plaintiff, Nicholas Fuentes, is an American citizen who has been placed on the No Fly List by the Defendants because of his constitutionally protected associations

93. The Defendants' actions – both systematically and with respect to Fuentes – violate the First Amendment to the United States Constitution.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff seek declaratory and injunctive relief as follows:

A. A declaratory judgment finding that the Defendants' operation of the No Fly List violates the Plaintiff's Fifth, Ninth, and Fourteenth Amendment rights to interstate travel. and is unconstitutional.

B. A declaratory judgment finding that the Defendants' operation of the No Fly List violates the Plaintiff's Fifth Amendment right to procedural due process.

C. A declaratory judgment finding that the Defendants' operation of the No Fly List violates the Plaintiff's First Amendment right to free speech.

D. A declaratory judgment finding that the Defendants' operation of the No Fly List violates the Plaintiff's First Amendment right to freedom of the press.

E. A declaratory judgment finding that the Defendants' operation of the No Fly List violates the Plaintiff's First Amendment right to freedom of association.

F. Costs and attorney's fees.

G. Such other relief as this Court deems fair and equitable.

THE DEFENDANT
/s/ Norman A. Pattis /s/
NORMAN A. PATTIS, ESQ.
PATTIS & SMITH, LLC
383 Orange Street
New Haven, CT 06511
Tel:  (203) 393-3017
Fax: (203) 393-9745
npattis@pattisandsmith.com