**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NICHOLAS FUENTES,

        *Plaintiff,*

   v.

JOSEPH R. BIDEN, JR., *et al.*,

        *Defendants.*

Case No. 1:21-cv-03106 (APM)

## OFFICIAL CAPACITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Official Capacity Defendants, Joseph R. Biden, Jr., *et al.*, by and through counsel, move to dismiss all claims in the Plaintiff's Amended Complaint. For the reasons more fully set forth below, Plaintiff lacks standing to bring this lawsuit, this Court lacks jurisdiction to review Plaintiff's claims, and Plaintiff fails to state claims for which relief can be granted.

In support of this motion, Defendants respectfully refer the Court to the accompanying memorandum of points and authorities. A proposed order consistent with this motion is also attached. Because this is a dispositive motion, Defendants have not sought Plaintiff's consent. *See* Local Civil Rule 7(m).

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NICHOLAS FUENTES,

        *Plaintiff,*

    v.

JOSEPH R. BIDEN, JR., *et al.*,

        *Defendants.*

Case No. 1:21-cv-03106 (APM)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OFFICIAL CAPACITY DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................1

BACKGROUND.................................................................................................3

I.     Legal Background ........................................................................................3

II.    Procedural Background and Plaintiff's Factual Allegations............................6

LEGAL STANDARD .........................................................................................9

I.     Rule 12(b)(1) .............................................................................................9

II.    Rule 12(b)(6) ...........................................................................................10

ARGUMENT ...................................................................................................11

I.     PLAINTIFF LACKS STANDING TO BRING HIS CLAIMS IN FEDERAL COURT. 11

     A.    Plaintiff Cannot Use a Past Injury to Demonstrate Article III Standing For Purposes of Injunctive Relief, and Any Allegations of Future Injury Are Speculative.......................................................................................11

     B.    Plaintiff Fails to Allege Any Harms at All Traceable to Several Defendants, Justifying Their Dismissal. ................................................................15

II.    THE COURT LACKS JURISDICTION OVER PLAINTIFF'S CLAIMS UNDER 49 U.S.C. § 46110.........................................................................................17

III.   PLAINTIFF ALSO FAILS TO STATE VIABLE CLAIMS FOR RELIEF. ................21

     A.    Plaintiff's Due Process and Ninth Amendment Claims Fail ..............................21

          1.    Count II (Procedural Due Process) Should Be Dismissed. ....................21

               a.    Plaintiff Does Not Establish the Deprivation of any Protected Liberty or Property Interest.......................................................22

               b.    The Available Procedures Are Constitutionally Adequate. .........25

          2.    Count I (Substantive Due Process, Ninth Amendment) Should Be Dismissed...............................................................................28

     B.    Plaintiff's First Amendment Claims Fail.........................................................30

          1.    Plaintiff Has Not Plausibly Alleged That His Prior TSA Deny Boarding List Placement Was Retaliation For Protected Speech.............................31

2.      Plaintiff's Threatening Speech Was Not Protected First Amendment
        Activity.................................................................................................35

3.      Count V (Freedom of Association) is Baseless......................................41

CONCLUSION..............................................................................................................42

# TABLE OF AUTHORITIES

**Cases**

\* *Abdi v. Wray*,
    942 F.3d 1019 (10th Cir. 2019) ............................................................... 23, 25

*Abdi v. Wray*,
    No. 2:17-cv-622, 2018 WL 1940411 (D. Utah Apr. 23, 2018) ........................ 25

*Adams v. U.S. Capitol Police Bd.*,
    564 F. Supp. 2d 37 (D.D.C. 2008) ................................................................. 11

*Aeronautical Repair Station Ass'n, Inc. v. FAA*,
    494 F.3d 161 (D.C. Cir. 2007) ..................................................................... 30

*Al Haramain Islamic Foundation, Inc., v. Islamic Rep. of Iran*,
    686 F.3d 965 (9th Cir. 2012) ....................................................................... 26

*Al-Aulaqi v. Panetta*,
    35 F. Supp. 3d 56 (D.D.C. 2014) ................................................................... 4

*Al-Kidd v. Gonzales*,
    No. 05-093, 2007 WL 4391029 (D. Idaho Dec. 10, 2007) ........................ 14, 15

*Al-Owhali v. Ashcroft*,
    279 F. Supp. 2d 13 (D.D.C. 2003) ................................................................ 10

*Alemu v. Department of For-Hire Vehicles*,
    327 F. Supp. 3d 29 (D.D.C. 2018) ................................................................ 16

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
    526 U.S. 40 (1999) ..................................................................................... 21

*American Dental Ass'n v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir.2010) .................................................................... 33

*Americopters, LLC v. FAA*,
    441 F.3d 726 (9th Cir. 2006) ...................................................................... 20

*Amerijet Int'l, Inc. v. DHS*,
    43 F. Supp. 3d 4 (D.D.C. 2014) ................................................................... 20

\* *Amerijet Int'l, Inc. v. Pistole*,
    753 F.3d 1343 (D.C. Cir. 2014) .............................................................. 26, 27

\* *Aref v. Lynch*,
    833 F.3d 242 (D.C. Cir. 2016) .................................................................... 31

*Arizonans for Off. Eng. v. Arizona*,
    520 U.S. 43 (1997) ..................................................................................... 12

*Arpaio v. Obama*,
  797 F.3d 11 (D.C. Cir. 2015) ......................................................... 12

\* *Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................... *passim*

*Baker v. Carr*,
  369 U.S. 186 (1962) ................................................................. 11

*Bazzi v. Lynch, No. 16-10123*,
  2016 WL 4525240 (E.D. Mich. Aug. 30, 2016) ............................... 19

\* *Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................... 10, 16, 41

\* *Beydoun v. Lynch*,
  No. 14-CV-13812, 2016 WL 3753561 (E.D. Mich. July 14, 2016) ............ 19, 25

\* *Beydoun v. Sessions*,
  871 F.3d 459 (6th Cir. 2017) ...................................................... 19, 23

*Black Lives Matter D.C. v. Trump*,
  544 F. Supp. 3d 15 (D.D.C. 2021) ................................................. 31

\* *Blitz v. Napolitano*,
  700 F.3d 733 (4th Cir. 2012) ...................................................... 17, 18

*Bonacci v. Trans. Sec. Admin.*,
  909 F.3d 1155 (D.C. Cir. 2018) .................................................... 26

*Boniface v. DHS*,
  613 F.3d 282 (D.C. Cir. 2010) ..................................................... 19

*Boy Scouts of Am. v. Dale*,
  530 U.S. 640 (2000) ................................................................. 41

\* *Brandenburg v. Ohio*,
  395 U.S. 44 (1969) ................................................................ 3, 36

*Chula Vista Citizens for Jobs & Fair Competition v. Norris*
  755 F.3d 671 (9th Cir. 2014) ....................................................... 41

*City of Dania Beach v. FAA*,
  485 F.3d 1181 (D.C. Cir. 2007) .................................................... 17

*City of Houston v. F.A.A.*,
  679 F.2d 1184 (1982) ............................................................... 23

\* *City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ................................................................ 1, 11

\* *Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ................................................................... 1, 12, 13

*Comcast Corp. v. FCC,*
    526 F.3d 763 (D.C. Cir. 2008) ................................................... 32

*Connecticut v. United States Dep't of the Interior,*
    344 F. Supp. 3d 279 (D.D.C. 2018) ............................................ 4, 5

*Conservation Force, Inc. v. Jewel,*
    733 F.3d 1200 (D.C. Cir. 2013) ................................................. 27

*Corbett v. United States,*
    458 F. App'x 866 (11th Cir. 2012) ............................................ 18

*Cramer v. Skinner,*
    931 F.2d 1020 (5th Cir. 1991) ................................................... 22

*Crawford v. Barr,*
    No. 17-cv-798-JEB, 2019 WL 6525652 (D.D.C. Dec. 4, 2019) ........................................ 10

*D.C. Fed'n of Civic Ass'ns v. Volpe,*
    459 F.2d 1231 (D.C. Cir. 1971) ................................................. 31

\* *Dearth v. Holder,*
    641 F.3d 499 (D.C. Cir. 2011) ................................................... 12

*DeBrew v. Atwood,*
    244 F. Supp. 3d 123 (D.D.C. 2017) ............................................ 16

*Dep't of Com. v. New York*
    139 S. Ct. 2551 ....................................................................... 32

\* *Doe v. Cheney,*
    885 F.2d 898 (D.C. Cir. 1989) ................................................... 23, 24

*Doe v. U.S. Dep't of Justice,*
    753 F.2d 1092 (D.C. Cir. 1985) ................................................. 24

*Ege v. DHS,*
    784 F.3d 791 (D.C. Cir. 2015) ................................................... 19, 20

*Egbert v. Boule,*
    No. 21-147, 2022 WL 2056291 (U.S. June 8, 2022) ....................................... 16

*El Ali v. Barr,*
    473 F. Supp. 3d 479 (D. Md. 2020) ............................................ 19

\* *Elhady v. Kable,*
    993 F.3d 208 (4th Cir. 2021) ................................................... *passim*

*Elonis v. U.S.*,
   575 U.S. 723 (2015) ........................................................................... 36

*Evans v. Chalmers*,
   703 F.3d 636 (4th Cir. 2012) ............................................................ 23

*Fraternal Ord. of Police v. D.C.*,
   502 F. Supp. 3d 45 (D.D.C. 2020) .................................................... 28

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*,
   528 U.S. 167 (2000) ........................................................................... 1

\* *George v. Rehiel*,
   738 F.3d 562 (3d Cir. 2013) .................................................. 32, 33, 35

\* *Ghedi v. Mayorkas*,
   16 F.4th 456 (5th Cir. 2021) .............................................................. 23

*Gilbert v. Homar*,
   520 U.S. 924 (1997) ........................................................................... 26

*Gill v. Whitford*,
   138 S. Ct. 1916 (2018) ....................................................................... 11

\* *Gilmore v. Gonzales*,
   435 F.3d 1125 (9th Cir. 2006) ................................................ 2, 18, 20, 22

*Gordon v. FBI*,
   388 F. Supp. 2d 1028 (N.D. Cal. 2005) ............................................ 14

*Haase v. Sessions*,
   835 F.2d 902 (D.C. Cir. 1987) .......................................................... 16

*Haig v. Agee*,
   453 U.S. 280 (1981) ........................................................................... 26

*Harrington v. Bush*,
   553 F.2d 190 (D.C. Cir. 1977) .......................................................... 15

*Harris v. Trustees of Univ. of D.C.*,
   567 F. Supp. 3d 131 (D.D.C. 2021) .................................................. 33

*Hartman v. Moore*,
   547 U.S. 250 (2006) ........................................................................... 33

\* *Hasenfus v. LaJeunesse*,
   175 F.3d 68 (1st Cir. 1999) ........................................................... 29, 30

*Hentz v. Ceniga*,
   402 F. App'x 214 (9th Cir. 2010) ...................................................... 34

*Hutchins v. District of Columbia*,
  188 F.3d 531 (D.C. Cir. 1999) (en banc) ....................................................... 29

* *In re Domestic Airline Travel Antitrust Litig.*,
  221 F. Supp. 3d 46 (D.D.C. 2016) ............................................................ 1, 11

*Isaacs v. Bowen*,
  865 F.2d 468 (2d Cir. 1989) ...................................................................... 28

* *Jifry v. FAA*,
  370 F.3d 1174 (D.C. Cir. 2004) .................................................................. 19

*Kalu v. IRS*,
  159 F. Supp. 3d 16 (D.D.C. 2016) .............................................................. 14

* *Kashem v. Barr*,
  941 F.3d 358 (9th Cir. 2019) ................................................................ 18, 27

*Khadr v. United States*,
  529 F.3d 1112 (D.C. Cir. 2008) .................................................................. 10

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ................................................................................... 9

* *Kovac v. Wray*,
  363 F. Supp. 3d 721 (N.D. Tex. 2019) ...................................................... 24

*Kurd v. Republic of Turkey*,
  374 F. Supp. 3d 37 (D.D.C. 2019) ............................................................ 34

*League of United Latin Am. Citizens v. Bredesen*,
  500 F.3d 523 (6th Cir. 2007) ..................................................................... 23

*Ligon v. LaHood*,
  614 F.3d 150 (5th Cir. 2010) ..................................................................... 20

* *Long v. Pekoske*,
  --- F.4th ---, 2022 WL 2336796 (4th Cir. June 29, 2022).......................... 24

* *Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................. 11

*Matar v. TSA*,
  910 F.3d 538 (D.C. Cir. 2018) ................................................................... 19

* *Mathews v. Eldridge*,
  424 U.S. 319 (1976) ...................................................................... 21, 25, 26

*Miller v. Reed*,
  176 F.3d 1202 (9th Cir. 1999) ................................................................... 22

\* *Mohamed v. Holder*,
  266 F. Supp. 3d 868 (E.D. Va. 2017) ........................................................... 26, 29

*Mokdad v. Lynch*,
  804 F.3d 807 (6th Cir. 2015) ........................................................ 19

*Morgan v. FBI*,
  No. A-15-CA-1255-SS, 2016 WL 7443397 (W.D. Tex. May 24, 2016) ........................... 14

\* *Mosrie v. Barry*,
  718 F.2d 1151 (D.C. Cir. 1983) ...................................................... 24, 25

*Nat. Res. Def. Council v. Pena*,
  147 F.3d 1012 (D.C. Cir. 1998) ..................................................... 11

*New Life Evangelistic Ctr., Inc. v. Sebelius*,
  753 F. Supp. 2d 103 (D.D.C. 2010) ................................................ 35

*Nieves v. Bartlett*,
  139 S. Ct. 1715 (2019) .............................................................. 31

*Olivares v. TSA*,
  819 F.3d 454 (D.C. Cir. 2016) ...................................................... 18

\* *Orange v. District of Columbia*,
  59 F.3d 1267 (D.C. Cir. 1995) ...................................................... 23

*Palko v. Connecticut*,
  302 U.S. 319 (1937) ................................................................ 28

*Papasan v. Allain*,
  478 U.S. 265 (1986) ................................................................ 10

*Paul v. Davis*,
  424 U.S. 693 (1976) ................................................................ 23

*Platsky v. Nat'l Sec. Agency*,
  No. 11-cv-4816-SLTRLM, 2013 WL 12121950 (E.D.N.Y. Jan. 30, 2013) ..................... 14

*Proctor v. DHS*,
  No. 18-70657, 2019 WL 4413273 (9th Cir. 2019) ........................................ 23

\* *R.A.V. v. City of St. Paul, Minn.*,
  505 U.S. 377 (1992) ................................................................ 36

*Raz v. Mueller*,
  389 F. Supp. 2d 1057 (W.D. Ark. 2005) .............................................. 15

\* *Reichle v. Howards*,
  566 U.S. 658 (2012) ................................................................ 33

*Reno v. Flores,*
    507 U.S. 292 (1993) ................................................................... 28

*Rhodes v. FBI,*
    316 F. Supp. 3d 173 (D.D.C. 2018) ......................................... 14

*Roberts v. Napolitano,*
    798 F. Supp. 2d 7 (D.D.C. 2011) ............................................. 19

*Roberts v. U.S. Jaycees,*
    468 U.S. 609 (1984) ................................................................... 41

*Rollins v. Wackenhut Servs., Inc.,*
    703 F.3d 122 (D.C. Cir. 2012) ................................................. 16

*Ruskai v. Pistole,*
    775 F.3d 61 (1st Cir. 2014) ...................................................... 18

*Safe Extensions, Inc. v. FAA,*
    509 F.3d 593 (D.C. Cir. 2007) ................................................. 17

*Seraji v. Gowadia,*
    No. 16-cv-01637, 2017 WL 2628545 (C.D. Cal. Jan. 18, 2017) ....................................... 20

*Shearson v. Holder,*
    865 F. Supp. 2d 850 (N.D. Ohio 2011) ................................... 14

* *Sheikh v. District of Columbia,*
    77 F. Supp. 3d 73 (D.D.C. 2015) ......................................... 3, 28

*Siegert v. Gilley,*
    500 U.S. 226 (1991) ................................................................... 23

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.,*
    549 U.S. 422 (2007) ................................................................... 10

*Skurow v. DHS,*
    892 F. Supp. 2d 319 (D.D.C. 2012) ........................................ 14

*Slaby v. Fairbridge,*
    3 F. Supp. 2d 22 (D.D.C. 1998) .............................................. 28

*Sledge v. D.C.,*
    63 F. Supp. 3d 1 (D.D.C. 2014) .............................................. 35

*Sparrow v. United Air Lines, Inc.,*
    216 F.3d 1111 (D.C. Cir. 2000) .............................................. 10

*Suburban Air Freight, Inc. v. Transp. Sec. Admin.,*
    716 F.3d 679 (D.C. Cir. 2013) ................................................. 26

*Swanson Grp. Mfg. LLC v. Jewell,*
  790 F.3d 235 (D.C. Cir. 2015) ...................................................................... 12

*Tarhuni v. Holder,*
  8 F. Supp. 3d 1253 (D. Or. 2014) ................................................................. 24

\* *Thompson v. Trump,*
  No. 21-CV-00400 (APM), 2022 WL 503384 (D.D.C. Feb. 18, 2022) ........................ 36, 37

*Tooley v. Bush,*
  No. 06-306, 2006 WL 3783142 (D.D.C. Dec. 21, 2006) .................................... 14

*Torraco v. Port Auth.,*
  615 F.3d 129 (2d Cir. 2010) .......................................................................... 23

*Town of Chester, N.Y. v. Laroe Ests., Inc.,*
  137 S. Ct. 1645 (2017) .................................................................................... 2

\* *Town of Southold v. Town of East Hampton,*
  477 F.3d 38 (2d Cir. 2007) ....................................................................... 22, 23

*Trudeau v. FTC,*
  456 F.3d 178 (D.C. Cir. 2006) ...................................................................... 10

*U.S. Postal Serv. v. Gregory,*
  534 U.S. 1 (2001) ......................................................................................... 32

*U.S. v. Stevens,*
  559 U.S. 460 (2010) ..................................................................................... 36

\* *U.S. v. Syring,*
  522 F. Supp. 2d 125 (D.D.C. 2007) ........................................................... 39, 40

*United States v. Alvarez,*
  567 U.S. 709 (2012) ..................................................................................... 38

*United States v. Flynn,*
  507 F. Supp. 3d 116 (D.D.C. 2020) ............................................................... 38

*United States v. Stanchich,*
  550 F. 2d 1294 (2d Cir. 1977) ...................................................................... 40

*Vazquez v. DOJ,*
  887 F. Supp. 2d 114 (D.D.C. 2012) ............................................................... 15

\* *Virginia v. Black,*
  538 U.S. 343 (2003) ................................................................................. 3, 39

*Ward v. D.C. Dep't of Youth Rehab. Servs.,*
  768 F. Supp. 2d 117 (D.D.C. 2011) ............................................................ 1, 11

*Wilkinson v. Austin,*
    545 U.S. 209 (2005) ............................................................ 26

*Wisconsin v. Constantineau,*
    400 U.S. 433 (1971) ............................................................ 23

*Wright v. FBI,*
    No. 3:20-CV-173-G-BN, 2020 WL 7345678 (N.D. Tex. Nov. 13, 2020) ......................... 14

**U.S. Constitution**

* U.S. Const. amend. V ............................................................ 21

**Statutes**

* 49 U.S.C. § 114 ............................................................ *passim*
49 U.S.C. § 44905 ............................................................ 3
49 U.S.C. § 44926 ............................................................ 6
* 49 U.S.C. § 46110 ............................................................ *passim*

**Rules**

* Fed. R. Civ. P. 12 ............................................................ *passim*
Fed. R. Civ. P. 25 ............................................................ 15
Fed. R. Evid. 201 ............................................................ 38

**Regulations**

49 C.F.R. § 1560.101 ............................................................ 5
49 C.F.R. § 1560.105 ............................................................ 5
49 C.F.R. § 1560.205 ............................................................ 6
49 C.F.R. §§ 1560.201, 1560.205 ............................................................ 6
49 C.F.R. §§ 1560.201-1560.207 ............................................................ 6

**Other**

5 RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 20.15(d),
    Westlaw (database updated May 2021) ............................................................ 37

# INTRODUCTION

Plaintiff Nicholas Fuentes made violent threats to suffocate and/or shoot flight attendants on a publicly-available online streaming platform. The Transportation Security Administration ("TSA"), on assessing the threat posed by Fuentes, placed him on its Deny Boarding List, from which he has since been removed. Through this action, Plaintiff challenges his former placement on the TSA Deny Boarding List on constitutional grounds. The Amended Complaint should be dismissed with prejudice for three reasons.

*First*, Plaintiff lacks standing because he has not alleged a cognizable injury from his prior placement on the TSA Deny Boarding List that is ongoing or imminent. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Plaintiff was informed through the Department of Homeland Security's Traveler Redress Inquiry Program ("DHS TRIP") process that he is no longer on the Deny Boarding List.[1] Past injuries plainly are not sufficient for a plaintiff to maintain standing to seek injunctive and declaratory relief, *see City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983), and Plaintiff has not alleged any well-pleaded facts sufficient to show an "injury in fact" that is "actual or imminent, [rather than] conjectural or hypothetical" from his former status. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). And insofar as

---

[1] *See* Compl. ¶¶ 55-60. The Final Determination Letter is attached to this Motion as Exhibit 1 along with a Notice of Electronic Filing of the video enclosures (pursuant to Local Civil Rule 5.4(e)(1)(A), Defendants have maintained copies of the two video files in their possession and will make copies available for the Court and Plaintiff via secure download and/or hand delivery if requested). These materials may properly be considered by this court in evaluating the motion to dismiss. *See In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 54 (D.D.C. 2016) ("Further, in deciding a Rule 12(b)(6) motion, a court may consider 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint,' or 'documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.'") (quoting *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011).

Plaintiff purports to advance facial challenges to the TSA watchlisting processes, *see, e.g.*, Compl. ¶¶ 72, 84, 96, he cannot advance such a challenge unless he personally has standing to sue, which he does not. *See Town of Chester, N.Y. v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1651 (2017) ("At least one plaintiff must have standing to seek each form of relief requested in the complaint.").

*Second*, this court lacks jurisdiction over Plaintiff's claims. No matter how framed, each of his constitutional claims arise from a challenge to a final order issued by TSA, which may only be brought in the Courts of Appeals pursuant to 49 U.S.C. § 46110. Because Congress has divested district courts of jurisdiction over such claims and has instead provided for exclusive jurisdiction in the courts of appeals, the Amended Complaint should be dismissed on this additional ground. Indeed, in apparent recognition of this jurisdictional defect, and subsequent to the filing of the Amended Complaint, Plaintiff filed a Petition for Review in the D.C. Circuit, challenging the very TSA order and procedures at issue in this case. *See* Petition for Review, *Fuentes v. U.S. Transportation Security Administration*, Case No. 22-1082 (D.C. Cir. May 13, 2022). Litigation with respect to this dispute should only occur in that court, if at all.

*Third*, even if Plaintiff could overcome both of these hurdles, his Amended Complaint fails to state any claims upon which relief can be granted. Plaintiff has alleged neither a deprivation of a liberty interest protected by the Fifth Amendment nor a plausible claim that the DHS TRIP redress procedures are constitutionally inadequate. Nor has he alleged a deprivation of his substantive due process rights under the Fifth Amendment. He cannot plausibly make out a claim that the TSA order here violates his right to travel – first, because he is no longer on the Deny Boarding list, and second, because of available travel alternatives. *See Gilmore v. Gonzales*, 435 F.3d 1125, 1137 (9th Cir. 2006) (holding that there is no "right to travel by airplane"). He also invokes the Ninth Amendment, which under settled law does not confer substantive rights

enforceable in civil actions. *See Sheikh v. District of Columbia*, 77 F. Supp. 3d 73, 80 (D.D.C. 2015) (Ninth Amendment "not a source of substantive rights, unless it is coupled with the denial of other fundamental rights."). These claims should be dismissed.

Plaintiff's First Amendment Claims are equally defective on their face. His conclusory efforts to tie political speech and activities other than his threats against flight attendants to TSA's decision-making should be rejected, and those threats are not entitled to First Amendment protection under established Supreme Court precedent. *See Brandenburg v. Ohio*, 395 U.S. 44 (1969) (incitement); *Virginia v. Black*, 538 U.S. 343 (2003) (true threats). Finally, his First Amendment Freedom of Association claim should be dismissed because it is pled in a conclusory fashion and does not satisfy Rule 12(b)(6), and is wholly baseless.

This court should dismiss the Amended Complaint with prejudice.

## BACKGROUND

### I.    Legal Background

One of TSA's primary responsibilities is to ensure aviation security. TSA is responsible for security in all modes of transportation; screening operations for passenger air transportation; receiving, assessing, and distributing intelligence information related to transportation security; assessing threats to transportation; coordinating countermeasures; and carrying out such other duties relating to transportation security as it considers appropriate. 49 U.S.C. §§ 114(d), (e), (f)(1), (f)(2), (f)(4), (f)(15). The TSA Administrator may "prevent an individual from boarding an aircraft or take other appropriate action" to mitigate threats to aviation security. 49 U.S.C. § 114(h). The Administrator is further directed to cancel a flight or series of flights if "a decision is made that a particular threat cannot be addressed in a way adequate to ensure, to the extent feasible, the safety of passengers and crew" of the affected flights. 49 U.S.C. § 44905(b). Additionally,

TSA must ensure that federal agencies "share . . . data on individuals . . . who may pose a risk to transportation or national security," and "establish procedures for notifying the Administrator of the Federal Aviation Administration, appropriate state and local law enforcement officials, and airport or airline security officers of the identity of individuals known to pose, or suspected of posing, a risk of air piracy or terrorism or a threat to airline or passenger safety." 49 U.S.C. § 114(h).

As part of its responsibility to require appropriate security measures for airline travelers who may pose a threat to civil aviation or national security, TSA administers the TSA Watch Lists (hereinafter also referred to as "Watch Lists" or "Lists"). *See* Privacy Impact Assessment Update for Secure Flight, DHS/TSA/PIA-018(h) (July 12, 2017), Exhibit 2 at 1.[2]  The TSA Watch Lists include a Deny Boarding List, an Enhanced Screening List, and a Security Notification List.  These Watch Lists prevent an individual from boarding an aircraft, require enhanced screening for an individual, or alert security personnel that an individual is expected at the airport, respectively. *Id.* at 3-4.

The TSA Watch Lists are distinct from the Terrorist Screening Dataset ("TSDS"), a consolidated dataset of identifying information about persons known or reasonably suspected of being involved in terrorist activity and which includes the No Fly List, the Selectee List, and the Expanded Selectee List.  The TSDS is maintained by the Terrorist Screening Center ("TSC").[3]

---

[2] It is well established that "judicial notice may be taken of public records and government documents available from reliable sources," *Al-Aulaqi v. Panetta,* 35 F. Supp. 3d 56, 67 (D.D.C. 2014), and a court may consider these materials "without converting the Federal Defendants' motion to dismiss to one for summary judgment." *Connecticut v. United States Dep't of the Interior*, 344 F. Supp. 3d 279, 291 n.4 (D.D.C. 2018).

[3] The TSC no longer uses the term "Terrorist Screening Database" (TSDB), as the term "Terrorist Screening Dataset" (TSDS) more accurately describes the terrorist screening information maintained by the TSC.  Any previous references to the TSDB would also be true of the TSDS.

The distinct TSA Watch Lists supplement the TSDS in two ways: (1) they permit TSA to take immediate action to mitigate threats and security risks while interagency coordination regarding consideration of an individual for inclusion in the TSDS is in process, and (2) they permit TSA to take measures to mitigate threats and risks to transportation security and airline or passenger safety that are unrelated to terrorism (e.g., an individual who repeatedly attempts to evade TSA's screening procedures at an airport checkpoint), whereas the TSDS solely pertains to terrorism-related threats. *See* Ex. 2 at 4-5.

TSA carries out these responsibilities in part through its "Secure Flight" program. *See id.*; 49 C.F.R. Pt. 1560. Under Secure Flight, covered aircraft operators request the full name, gender, date of birth, and other information from passengers, and submit the data to TSA. *Id.* § 1560.101(a)(1), (b). TSA uses the information to identify individuals "on Federal government watch lists who seek to travel by air." *Id*. § 1560.1(b). An aircraft operator may not issue a boarding pass to an individual "until TSA informs the covered aircraft operator of the results of watch list matching for that passenger," and, if TSA so directs, the aircraft operator "may issue a boarding pass to that individual [but] must identify the individual for enhanced screening, in accordance with procedures approved by TSA." *Id*. § 1560.105(b)(2).

Individuals may be added to a TSA Watch List based on intelligence, law enforcement information, or other available information, including publicly-sourced information, that indicates that they may be a threat to civil aviation or national security. *See* Ex. 2 at 4. Requests for additions to a TSA Watch List may come from within TSA, from other DHS components, or from other federal, state, local, or international government agencies. *Id*. Additions are based on established criteria and are approved by the TSA Administrator or his or her designee. *Id*. TSA conducts periodic reviews, generally on a quarterly basis, to recommend whether the individual should

remain on or be removed from a TSA Watch List. *Id.* These periodic reviews include review of current intelligence and other available information. *Id.*

Congress directed TSA to "establish a timely and fair process for individuals who believe they have been delayed or prohibited from boarding a commercial aircraft because they were wrongly identified as a threat under the regimes utilized by the [TSA]." 49 U.S.C. § 44926(a). The Department of Homeland Security ("DHS"), of which TSA is a component, has implemented this requirement by establishing DHS TRIP, through which travelers may request the correction of any erroneous information if they allege, *inter alia*, that they have been unfairly or incorrectly delayed or prohibited from boarding an aircraft as a result of TSA's watchlist matching. 49 C.F.R. §§ 1560.201, 1560.205. TSA has promulgated regulations governing DHS TRIP. *Id.* §§ 1560.201-1560.207. Under these regulations, travelers may initiate this redress process by submitting a redress inquiry. *See id.* § 1560.205(b); http://www.dhs.gov/trip.

If the traveler initiates the redress process and the traveler's name is a match or near match to a name on a relevant list, TSA will conduct a review, "correct any erroneous information, and provide the individual with a timely written response." 49 C.F.R. § 1560.205(d). Following review, DHS TRIP responds with a determination letter, which varies based on the circumstances, but which generally advises the traveler of corrections that may have been made as a result of DHS TRIP's review. Such final determination letters are TSA orders which are generally subject to judicial review exclusively in the Court of Appeals. 49 U.S.C. § 46110.

## II.   Procedural Background and Plaintiff's Factual Allegations

On or about January 4, 2021, Plaintiff threatened to suffocate and/or shoot flight attendants in a DLive livestream broadcast available to hundreds of thousands of viewers.[4]  Ex. 1 n. 1 (final

---

[4] Plaintiff describes himself as a political commentator and activist, *see* Compl. ¶ 2.

determination letter to plaintiff describing "graphic and violent nature of . . . threats directed toward flight attendants" contained in videos).  These threats appeared to stem from flight attendants requiring passengers to wear masks pursuant to then-prevailing public health requirements to stop the spread of Covid-19, *see* Amended Complaint ("Compl.") ¶ 58.

In one video, Plaintiff stated: "don't come to flight attendant school tomorrow, . . . I'm coming. I am going to open the door and everyone is going to [say] AHHHHH." Ex. 1 n.1.  He further stated, "You, you thought you could hide in the [bathroom] stall, I'm going to shake your hand too . . . through the stall door.  You think a stall door is going to stop me from shaking your hand?"  TSA interpreted Plaintiff' statements about shaking hands to refer to shooting individuals.

In another video, Plaintiff pretended to discuss a hypothetical interaction with a flight attendant telling him to wear a mask.  He said he would follow the flight attendant into the parking lot after landing and "put a mask on [the flight attendant] that covers [his or her] mouth and nose." Plaintiff then gestured as though he were forcefully placing something over another person's face – which TSA interpreted as a threat to suffocate flight attendants as a result of them enforcing the then-operative federal mask mandate for commercial airline travelers.

Plaintiff claims he was joking during these live broadcasts.  Compl. ¶ 58.  But in another publicly-available livestream broadcast in 2020, Plaintiff himself stated that "[i]rony is so important for giving a lot of cover and plausible deniability for our views." *See* National Public Radio, *How Extremists Weaponize Irony To Spread Hate*, Apr. 26, 2021, *available at* https://www.npr.org/2021/04/26/990274685/how-extremists-weaponize-irony-to-spread-hate.  In that same video, Plaintiff cited holocaust denial as an example of a subject where irony or humor can provide cover to the speaker, and stated "when it comes to a lot of these issues, you need a little bit of maneuverability that irony gives you." *Id.*

Two days later, Plaintiff alleges that he was present at the United States Capitol during the January 6, 2021, insurrection (Compl. ¶¶ 37-42), but remained in the permitted demonstration area outside of the Capitol and never entered the building. Compl. ¶ 41. In an investigation following these events, TSA assessed the two videos from his DLive platform and determined, "based on the totality of available information," that Plaintiff "may be a threat to civil aviation or national security." Ex. 1 at 1 (quoting 49 U.S.C. § 114(h)(3)(A)). Based on that review, Plaintiff was placed on TSA's Deny Boarding List on January 12, 2021. *Id.*

Plaintiff alleges that he first suspected he was on the TSA Deny Boarding List on April 25, 2021, when he tried to check into an American Airlines flight from Chicago to Fort Lauderdale, FL, but was unable to do so. Compl. ¶ 48. Upon returning home from the airport, he called TSA and was informed that he could submit a redress request through the DHS TRIP system. Compl. ¶ 41. Plaintiff submitted his redress inquiry on April 27, 2021. Ex. 1; Compl. ¶ 52. Plaintiff alleges that he tried to fly from Midway Airport in Chicago to Phoenix and was unable to check in for a Southwest Airlines flight. Compl. ¶ 53.[5]

After conducting a review of the applicable records, on March 11, 2022, DHS TRIP sent Plaintiff a letter in response to his redress inquiry. In that letter, Plaintiff was informed that he had been placed on the TSA Deny Boarding List on January 12, 2021, based on videos that he had posted on DLive, a live-streaming platform, in which he threatened to suffocate and/or shoot flight attendants. As the letter explained to Plaintiff, based on those videos, "TSA determined that you

---

[5] In his Amended Complaint, Plaintiff also advances factual allegations relating to cryptocurrency donations that Plaintiff allegedly received from anonymous donors in connection with certain political activities or as a birthday present (Compl. ¶¶ 29-36), and the alleged freezing of certain assets in his bank account by government officials following the events of January 6, 2021 (Compl. ¶¶ 43-46). The relevance of these factual allegations to Plaintiff's claims are not readily apparent on the face of the Amended Complaint.

were an individual who expressed an intent of carrying out or inciting an act that represents an imminent threat to the life of airline crew and your expression of intent appeared, under the circumstances, to be likely to incite or produce such action." Ex. 1 at 1. The letter was transmitted electronically via email to Plaintiff, and that email included "true and correct copies of these videos" as attachments. *Id.*

The letter went on to inform Plaintiff that he was removed from the Deny Boarding List on November 2, 2021, and that "TSA will not place you back on TSA's Deny Boarding List based on currently available information." Ex. 1 at 2. He was also advised that TSA could not guarantee that his travel would be "delay-free" because, among other reasons, "individual air carriers may deny passengers boarding pursuant to their own authority." See Ex. 1 at 2. Therefore, though Plaintiff alleges that "[w]hen a person is denied the ability to travel by air, they are often left to guess as to the reason why," Compl. ¶¶ 28, he was informed of his past placement on the Deny Boarding List, the reasons for that past placement, and that he was no longer on the List.

Plaintiff's initial Complaint was filed after he was removed from the TSA Deny Boarding List. *See* Ex. 1 at 1 ("On November 2, 2021, TSA removed you from TSA's Deny Boarding List"), ECF 1 (November 23, 2021). Following his receipt of the DHS TRIP letter, the Government consented to Plaintiff's request to file an Amended Complaint, which Plaintiff filed on May 2, 2022. *See* ECF 13.

## LEGAL STANDARD

### I.   Rule 12(b)(1)

Motions brought pursuant to Rule 12(b)(1) challenge whether the district court has jurisdiction over the action. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and a party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists,

*Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).  When a defendant raises an issue of subject matter jurisdiction under Rule 12(b)(1), the Court must resolve the jurisdictional issue before it proceeds to the merits of the plaintiff's claims.  *See, e.g., Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007).  "When reviewing a challenge pursuant to Rule 12(b)(1), the Court may consider documents outside the pleadings to assure itself that it has jurisdiction." *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 21 (D.D.C. 2003) (citation omitted).

## II.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted."  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations omitted).  The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint.  *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Crawford v. Barr*, No. 17-cv-798-JEB, 2019 WL 6525652, at *2 (D.D.C. Dec. 4, 2019) (citation omitted).  In deciding a Motion to Dismiss under Rule 12(b)(6), this "court may consider 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint,' or 'documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in

the complaint but by the defendant in a motion to dismiss.'" *In re Domestic Airline Travel Antitrust Litig.,* 221 F. Supp. 3d 46, 54 (D.D.C. 2016) (quoting *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011)).

## ARGUMENT

I.    **PLAINTIFF LACKS STANDING TO BRING HIS CLAIMS IN FEDERAL COURT**

Plaintiff cannot invoke the jurisdiction of this court unless he "can show 'a personal stake in the outcome of the controversy.'" *Gill v. Whitford,* 138 S. Ct. 1916, 1929 (2018) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).   A plaintiff's standing to sue "is a threshold jurisdictional question." *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1021 n.3 (D.C. Cir. 1998).   At its "irreducible constitutional minimum," the doctrine requires satisfaction of three elements: (1) a concrete and particularized injury-in-fact, either actual or imminent, (2) a causal connection between the injury and defendant's challenged conduct, and (3) a likelihood that the injury suffered will be redressed by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561; *see also Adams v. U.S. Capitol Police Bd.*, 564 F. Supp. 2d 37, 39–40 (D.D.C. 2008) ("On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction.")

   A.   **Plaintiff Cannot Use a Past Injury to Demonstrate Article III Standing For Purposes of Injunctive Relief, and Any Allegations of Future Injury Are Speculative.**

Plaintiff's Amended Complaint advances claims based on his past placement on TSA's Deny Boarding List (which ended on November 2, 2021), but under the line of cases associated with *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), past injuries are insufficient to establish

standing where a plaintiff seeks declaratory or injunctive relief. *See Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011) ("In a case of this sort, where the plaintiffs seek declaratory and injunctive relief, past injuries alone are insufficient to establish standing.")  This in turn creates "a significantly more rigorous burden to establish standing than that on parties seeking redress for past injuries." *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015). In order to have standing, a plaintiff "must show he is suffering an ongoing injury or faces an immediate threat of injury." *Dearth*, 641 F.3d at 501; *see also Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) ("because [plaintiff] seeks prospective declaratory and injunctive relief, he must establish an ongoing or future injury that is 'certainly impending'; he may not rest on past injury.") (quoting *Clapper,* 568 U.S. at 402).[6]

Here, Plaintiff's allegations with respect to his placement on the Deny Boarding List fail under a straightforward application of *Clapper*. In that case, a group of attorneys and human rights, labor, legal, and media organizations claimed to have standing to challenge the constitutionality of the Foreign Intelligence Surveillance Act ("FISA") because their activities – principally communicating with individuals abroad – rendered it more likely that their communications would be intercepted.  The Supreme Court held that this fear was inadequate for purposes of Article III standing, reiterating that "threatened injury must be *certainly impending* to constitute injury in fact," and that "allegations of *possible* future injury" are not sufficient." *Clapper*, 568 U.S. at 409 (citation omitted).  Here, that Plaintiff was once placed on TSA's Deny Boarding List for the

---

[6] Given that Plaintiff was removed from TSA's Deny Boarding List on November 2, 2021, prior to his instituting this action, Plaintiff lacked standing at the inception of the lawsuit to challenge his then-prior status.  As a result, standing, not mootness, principles apply. *Cf. Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67-68 & n.22 (1997) (a case is *moot* where "the requisite personal interest that *must exist at the commencement of the litigation*" is no longer present.") (emphasis supplied).

reasons already explained to him falls well short of establishing a future likelihood that he will once again be placed on that list. Plaintiff does not allege to have threatened flight attendants since January 4, 2021, and neither the federal government nor U.S. air carriers currently require passengers to wear face masks onboard aircraft.

Another obvious standing problem, flowing from *Clapper*, is illustrated by the undifferentiated allegations in the Amended Complaint with respect to the various Defendants named in this action. In *Clapper*, one issue in the plaintiff's "highly attenuated chain of possibilities" for injury was the problem that it was "mere speculation" as to "whether [any] surveillance would be under" the challenged statute "or some other authority," which in turn "shows that respondents cannot satisfy the requirement that any injury in fact must be fairly traceable to" the challenged statute. 568 U.S. at 410-11. Here, Plaintiff was placed on TSA's Deny Boarding List, but he also has named as defendants several other government agencies he claims are involved in maintaining information in other government databases or who are involved in the administration of the TSDS – a separate watchlisting process. Plaintiff has pled no allegations which even allege, let alone in a facially plausible fashion that would meet the requirements of Rule 12(b)(6), that he is likely to end up on another watchlist.

Alternatively, insofar as Plaintiff now seeks to recast his theory of injury as one arising from the fact that TSA "offered no guarantees about whether it was still keeping [Plaintiff] on any other of its lists," Compl. ¶ 60, Plaintiff offers no facts indicating placement on another TSA watchlist, and in any event, such an allegation would plainly be insufficient because courts in the TSDS context have widely upheld the government's policy of neither confirming nor denying a particular individual's placement on a government watchlist, as requiring disclosure of a particular individual's status would compromise transportation security and/or national security.

13

As an initial mater, the factual allegations in the Amended Complaint do not plausibly suggest any placement on another TSA watchlist.  *See* Compl. ¶¶ 61-65.  In any event, as the Fourth Circuit found in *Elhady v. Kable*:

> [T]he government has a general policy of not disclosing TSD[S] status, whether positive or negative, in response to inquiries. The reason for this is apparent. Disclosure would disrupt and potentially destroy counterterrorism investigations because terrorists could alter their behavior, avoid detection, and destroy evidence. For example, if a terrorist group knew that some of its operatives were not in the TSD[S], it could craft a plan sending those operatives through an airport or border while helping other members avoid detection.

993 F.3d 208, 215 (4th Cir. 2021).  Other cases holding similarly are legion. *See Shearson v. Holder*, 865 F. Supp. 2d 850, 861 n.2 (N.D. Ohio 2011) (recognizing that "the TSD[S] status of a particular individual can neither be confirmed nor denied"), *aff'd*, 725 F.3d 588 (6th Cir. 2013); *Kalu v. IRS*, 159 F. Supp. 3d 16, 23 (D.D.C. 2016) ("[A]mong other adverse consequences of full or even partial disclosure [of TSDS status] is that '[r]equiring the government to reveal whether a particular person is on the watch lists would enable criminal organizations to circumvent [the TSDS's] purpose[.]'" (quoting *Gordon v. FBI*, 388 F. Supp. 2d 1028, 1037 (N.D. Cal. 2005)); *Rhodes v. FBI*, 316 F. Supp. 3d 173, 178 (D.D.C. 2018) (similar); *Morgan v. FBI*, No. A-15-CA-1255-SS, 2016 WL 7443397, at *4 (W.D. Tex. May 24, 2016) (similar); *Wright v. FBI,* No. 3:20-CV-173-G-BN, 2020 WL 7345678, at *8 (N.D. Tex. Nov. 13, 2020) (similar); *Platsky v. Nat'l Sec. Agency*, No. 11-cv-4816-SLTRLM, 2013 WL 12121950, at *4 (E.D.N.Y. Jan. 30, 2013) (similar), *aff'd*, 547 F. App'x 81 (2d Cir. 2013); *Skurow v. DHS*, 892 F. Supp. 2d 319, 332 (D.D.C. 2012) (similar); *Tooley v. Bush*, No. 06-306, 2006 WL 3783142, at *20 (D.D.C. Dec. 21, 2006) (similar), *aff'd sub nom., Tooley v. Napolitano*, 586 F.3d 1006 (D.C. Cir. 2009); *Al-Kidd v. Gonzales*, No. 05-093, 2007 WL 4391029, at *9 (D. Idaho Dec. 10, 2007) ("the public interest in [protecting information in the TSDS] weighs decidedly in favor of nondisclosure for security

reasons."); *Raz v. Mueller,* 389 F. Supp. 2d 1057, 1062 (W.D. Ark. 2005) (similar); *cf. Vazquez v. DOJ*, 887 F. Supp. 2d 114, 117-18 (D.D.C. 2012) (same, as to FBI databases).

Because Plaintiff has not suffered a cognizable injury under any plausible theory, the court need not consider the remaining elements of standing or any other issue in the case.  *See Harrington v. Bush*, 553 F.2d 190, 205 n. 68 (D.C. Cir. 1977) ("If the court finds that there is no injury fact,  no  other  inquiry  is  relevant  to  consideration of standing"  and "a court need not render a decision on the validity or scope of the interests at stake in the litigation").

### B.  Plaintiff Fails to Allege Any Harms at All Traceable to Several Defendants, Justifying Their Dismissal.

As mentioned above, notwithstanding that Plaintiff's claims are properly directed against TSA, Plaintiff attempts to sweep in a range of other agencies and officials.  This effort should be rejected.  The Amended Complaint contains no well-pleaded facts tying any harms suffered by Plaintiff to the following named government official defendants:  President Joseph R. Biden, Jr., Attorney General Merrick Garland, FBI Director Christopher Wray, Secretary of State Antony Blinken, Postmaster General Louis Dejoy, Acting Administrator of the Federal Aviation Administration Billy Nolen,[7] and Secretary of Defense Lloyd Austin.  Aside from a generalized allegation that "the Terrorist Screening Center and the No Fly List program is a multi-agency venture, including representatives from the FBI, the Department of State, the Department of Defense, the Department of Homeland Security, the United States Postal System, the Transportation Security Administration, and the Federal Aviation Administration," Compl. ¶ 22,

---

[7] Steve Dickson was Administrator of the FAA until April 2022 and is still named as a defendant in this action, but Acting Administrator Nolen is the proper named defendant in light of the change of leadership at the agency. *See* Fed. R. Civ. P. 25(d).

Plaintiff does not tie any of these agencies or their named defendant leadership to any alleged harms suffered in the Amended Complaint.

It is an elementary principle of federal pleading practice that a plaintiff must plead sufficient factual content to allow a court "to draw the reasonable inference that [these Defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Here, aside from introducing the Defendants, Compl. ¶¶ 3-13, and pleading their general involvement in the TSDS watchlisting process as discussed above (a process not relevant to his claims in any event), Plaintiff never mentions these Defendants again in the Amended Complaint, much less describes how they caused any alleged injury. It is of course the case that "the standing inquiry turns on the allegations in the complaint," *Haase v. Sessions*, 835 F.2d 902, 907 (D.C. Cir. 1987), and here there are no allegations whatsoever that would permit a court to conclude that an injury was traceable to these Defendants. While it is certainly true that "[g]eneral factual allegations of injury resulting from the defendant's conduct may suffice" for injury-in-fact at the pleading stage, *Alemu v. Department of For-Hire Vehicles*, 327 F. Supp. 3d 29, 42 (D.D.C. 2018), here there are no such allegations at all, general or specific. That ends the issue as to these Defendants. *See Iqbal*, 556 U.S. at 684-85 ("'It is no answer to say that a claim just shy of plausible entitlement to relief can, if groundless, be weeded out early in the discovery process.'") (quoting *Twombly*, 550 U.S. at 559). *Cf. DeBrew v. Atwood*, 244 F. Supp. 3d 123, 131 (D.D.C. 2017) ("plaintiff's amended complaint supplies no more than 'a naked assertion' of the individual defendants' supposed participation in the events giving rise to the constitutional claims.") (quoting *Twombly*). Therefore, dismissal is warranted at least as to defendants Biden, Garland, Wray, Blinken, DeJoy, Nolen, and Austin.[8]

---

[8] Counsel only represents the official capacity defendants in this action. However, counsel notes that any effort to pursue a *Bivens* remedy for damages against the unnamed John Doe defendant in the Amended Complaint would be foreclosed by recent Supreme Court precedent. *See Egbert*

## II.   THE COURT LACKS JURISDICTION OVER PLAINTIFF'S CLAIMS UNDER 49 U.S.C. § 46110

Even if Plaintiff could establish standing (which he cannot), this Court lacks subject-matter jurisdiction over Plaintiff's claims because they all challenge a TSA order, and therefore must be brought in a court of appeals under 49 U.S.C. § 46110. Indeed, Plaintiff appears to have recognized the applicability of § 46110, because he has, albeit belatedly, filed a separate petition for review, based on the same allegations, in the D.C. Circuit. *See* Petition for Review, *Fuentes v. U.S. Transportation Security Administration*, Case No. 22-1082 (D.C. Cir. May 13, 2022).

Section 46110 provides for exclusive jurisdiction in the courts of appeals to review an "order" issued "in whole or in part" by TSA. 49 U.S.C. § 46110(a), (c). The D.C. Circuit has instructed that "order" in Section 46110 be "read expansively." *Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 598 (D.C. Cir. 2007) (quoting *City of Dania Beach v. FAA*, 485 F.3d 1181, 1187 (D.C. Cir. 2007)). An agency disposition is a reviewable "order" under Section 46110 if it "mark[s] the consummation of the agency's decisionmaking process and determine[s] rights or obligations or give[s] rise to legal consequences." *Id.*; *see Blitz v. Napolitano*, 700 F.3d 733, 740 (4th Cir. 2012) ("[F]or an order to be subject to review in a court of appeals, it must represent the final disposition of the matter it addresses.") (internal citation omitted). This includes any challenge to a TSA order

---

*v. Boule*, No. 21-147, 2022 WL 2056291, at *9 (U.S. June 8, 2022) ("Now presented with the question whether to extend *Bivens* to this context, we hold that there is no *Bivens* action for First Amendment retaliation."). This court has inherent authority to dismiss the unnamed John Doe defendant based on this clear Supreme Court precedent. *See Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 127 (D.C. Cir. 2012) ("the district court may *sua sponte* dismiss a claim pursuant to Rule 12(b)(6) without notice where it is patently obvious that the plaintiff cannot possibly prevail based on the facts alleged in the complaint") (internal quotations and citations omitted).

that resolves Plaintiff's placement on TSA's Deny Boarding List, and any challenge to the adequacy of the procedures Plaintiff received through DHS TRIP to contest that placement.

Because the final determination letter Plaintiff received is such an order that resolves these challenges, it is subject to the requirements of Section 46110, and is subject to review only in a Court of Appeals. This final determination letter constitutes TSA's "definitive statement," *Gilmore*, 435 F.3d at 1132, and "final disposition," *Blitz*, 700 F.3d at 740, of Plaintiff's DHS TRIP inquiry.

Plaintiff's challenge to particular TSA security measures authorized by Congress and chosen by TSA to ensure aviation security necessarily implicates TSA orders, as it involves TSA's statutory authority to establish screening procedures and deny boarding. *See* 49 U.S.C. §§ 114(e), (h); *Gilmore*, 435 F.3d at 1133 (holding that a TSA Security Directive implementing the agency's airline passenger identification policy is a final order within the meaning of § 46110); *accord Blitz*, 700 F.3d at 735-37; *Corbett v. United States*, 458 F. App'x 866, 871 (11th Cir. 2012); *Ruskai v. Pistole*, 775 F.3d 61, 65 (1st Cir. 2014). Thus, the Court lacks jurisdiction to consider the aspects of Plaintiff's claims that seek to challenge TSA's choice of security measures, including TSA's Deny Boarding List and Enhanced Screening List, which result in denials of boarding and enhanced security screening.

In *Olivares v. TSA*, the D.C. Circuit held that petitioner had properly invoked its jurisdiction pursuant to Section 46110 to challenge TSA's denial of his application to attend a flight school because he was a security risk. 819 F.3d 454, 462 (D.C. Cir. 2016). Appellate courts have found other TSA actions similarly subject to the requirements of Section 46110. *See, e.g., Kashem v. Barr*, 941 F.3d 358, 391 (9th Cir. 2019) (TSA redress determinations to maintain an individual on the No Fly List are TSA orders subject to exclusive court of appeals jurisdiction

pursuant to Section 46110); *Matar v. TSA*, 910 F.3d 538, 542 (D.C. Cir. 2018) (reviewing DHS

TRIP petition challenging alleged No Fly List placement and rejecting on other grounds); *Mokdad*

*v. Lynch*, 804 F.3d 807, 811 (6th Cir. 2015) (to the extent a plaintiff "challenges the adequacy of

the [DHS TRIP] redress process, his claims amount to a challenge to a TSA order."); *Jifry v. FAA*,

370 F.3d 1174, 78 (D.C. Cir. 2004) (reviewing due process challenge to regulations governing

TSA's revocation of airman certificates under Section 46110); *Boniface v. DHS*, 613 F.3d 282,

289 (D.C. Cir. 2010) (same for denial of waiver for hazardous materials endorsement).   And

district courts have dismissed lawsuits challenging TSA orders, finding that exclusive judicial

review is available in a U.S. Courts of Appeals. *El Ali v. Barr*, 473 F. Supp. 3d 479, 505 (D. Md.

2020) (dismissing district court challenge to TSA security measures pursuant to Section 46110

based in part on TSA's implementation of the program as part of its statutory mandate); *see also*

*Roberts v. Napolitano*, 798 F. Supp. 2d 7, 10 (D.D.C. 2011) (dismissing district court challenge to

TSA order for lack of jurisdiction under § 46110), *aff'd*, 463 F. App'x 4 (D.C. Cir. 2012); *Beydoun*

*v. Lynch*, No. 14-CV-13812, 2016 WL 3753561, at *3-4 (E.D. Mich. July 14, 2016) (dismissing

alleged Selectee's claims for failure to join TSA as a necessary party because the Complaint

essentially challenged DHS TRIP); *Bazzi v. Lynch*, No. 16-10123, 2016 WL 4525240, at *3-5

(E.D. Mich. Aug. 30, 2016) (same); both *aff'd on other grounds sub nom. Beydoun v. Sessions*,

871 F.3d 459 (6th Cir. 2017).

This case is not governed by the D.C. Circuit's decision in *Ege v. DHS*, 784 F.3d 791 (D.C.

Cir. 2015), which held that petitioner's challenges to placement on the TSDS belonged in district

court.   784 F.3d at 795.   There, the Court of Appeals reasoned that petitioner lacked standing to

invoke its jurisdiction because the Terrorist Screening Center ("TSC"), "the sole entity with . . .

authority to remove names" from the TSDS was not a named respondent. *Id.*[9]  The challenges here, however, are not directed at TSC, but at TSA, the entity with the sole authority to remove names from TSA's Deny Boarding List, and whose orders must be reviewed in a court of appeals. *See id.* at 795; *Seraji v. Gowadia*, No. 16-cv-01637, 2017 WL 2628545, at *7 (C.D. Cal. Jan. 18, 2017) (citing cases and noting that Section 46110 grants exclusive jurisdiction to the federal courts of appeals to review orders from a number of agencies, including TSA).  Thus, where Plaintiff's claims challenge TSA's final determination regarding Plaintiff's placement on its Deny Boarding List (notwithstanding that it was favorable), as well as the administrative procedures that were made available to him (which are codified in DHS regulations), these claims challenge final TSA orders and must be brought, if at all, in a court of appeals.

Even if Plaintiff's claims were not directly within Section 46110's ambit (which they are), at the very least, Plaintiff's claims are "inescapably intertwined" with orders that fall within Section 46110's jurisdiction-channeling provision, such as any challenge to the adequacy of the DHS TRIP letter (TSA's final determination) that Plaintiff received.  *See Ege*, 784 F.3d at 796 (noting that "courts use the 'inescapably intertwined' doctrine to review a claim not expressly included in a jurisdictional grant"); *Americopters, LLC v. FAA*, 441 F.3d 726, 736 (9th Cir. 2006); *Gilmore*, 435 F.3d at 1132; *see also Ligon v. LaHood*, 614 F.3d 150, 154-57 (5th Cir. 2010) (discussing the "inescapably intertwined" doctrine, giving the term "order" within the meaning of § 46110 "expansive construction," and collecting cases); *Amerijet Int'l, Inc. v. DHS*, 43 F. Supp. 3d 4, 14 (D.D.C. 2014).  For these reasons, all claims are subject to § 46110 and should be dismissed.

---

[9] The *Ege* decision was based on prior redress procedures for individuals challenging alleged placement on the No Fly List subset of the TSDS.  Now, that redress process culminates with a final order from the TSA Administrator subject to review under Section 46110.

## III.   PLAINTIFF ALSO FAILS TO STATE VIABLE CLAIMS FOR RELIEF

Even if the Court determined that it has subject-matter jurisdiction, Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) because Plaintiff fails to state a viable claim for relief.  No aspect of TSA's former decision to place Plaintiff on the TSA Deny Boarding List gives rise to a legitimate constitutional grievance entitling Plaintiff to prospective relief.

### A.  Plaintiff's Due Process and Ninth Amendment Claims Fail.

#### 1.  Count II (Procedural Due Process) Should Be Dismissed.

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  It protects both substantive and procedural due process rights.  Procedural due process rights arise when the Government deprives individuals of certain liberty or property interests.  When these interests are deprived, that deprivation gives rise to due process protections, the (general, but not universal) benchmarks of which are adequate notice of the reasons for the deprivation and an opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As to procedural due process, "the first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).  Only where such a deprivation has occurred can a plaintiff then invoke any entitlement to the familiar benchmarks of adequate notice and an opportunity to be heard that may be "due" under the Fifth Amendment. *Id*.  Accordingly, to state a procedural due process claim, a plaintiff must show (1) a cognizable liberty interest; (2) the deprivation of that interest by government action; and (3) that the procedures employed were constitutionally inadequate. *See id*.

Here, Plaintiff has not identified a cognizable liberty interest, nor has he alleged that existing procedures are inadequate to provide redress – indeed, Plaintiff obtained relief through the very process he now castigates when TSA informed him of his initial placement on the Deny Boarding List, the reasons for that placement, and the fact that he had been removed from the Deny Boarding List.

### a.   Plaintiff Does Not Establish the Deprivation of any Protected Liberty or Property Interest.

Plaintiff generally alleges that TSA violated his liberty interest in travel in violation of the Fifth Amendment when it placed him on the TSA Deny Boarding List.   Compl. ¶¶ 61-75. Although Plaintiff was informed through the DHS TRIP redress process that he is not on the Deny Boarding List, he further alleges that Defendants "never provided, and will never provide, him with an opportunity to directly challenge his inclusion on the list."  Compl. ¶ 77.  He also alleges that Defendants' "use of the No Fly List . . . amounts to the imposition of a criminal sanction with all the stigma that imposes," Compl. ¶ 78.

As an initial matter, Plaintiff has not alleged a deprivation of the right to travel simply because he was unable to board commercial flights.  The Second, Fifth, and Ninth Circuits have recognized that a traveler does not have a constitutional right to the most convenient form of travel, such as traveling by airplane as opposed to car.  *See Town of Southold v. Town of East Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (holding that there is no constitutional right to the most convenient form of travel); *Gilmore*, 435 F.3d at 1137 (holding that there is no "right to travel by airplane"); *Miller v. Reed*, 176 F.3d 1202, 1205 (9th Cir. 1999) (holding there is no "right to drive" and that "burdens on a single mode of transportation do not implicate the right to interstate travel"); *Cramer v. Skinner*, 931 F.2d 1020, 1031 (5th Cir. 1991) (holding that "travelers do not have a constitutional right to the most convenient form of travel"); *cf. Elhady*, 993 F.3d at 222 ("Many courts have held

22

that individuals do not have a protected liberty interest to travel via a particular mode of transportation.").

Here, regardless of Plaintiff's past status on TSA's Deny Boarding List, Plaintiff retained the ability to travel domestically by means other than commercial air travel.  And, of course, Plaintiff is now able to engage in commercial air travel without concern that TSA will deny him boarding as a result of inclusion on TSA's Deny Boarding List.  *See* Ex. 1 at 1 ("On November 2, 2021, TSA removed you from TSA's Deny Boarding List").  Accordingly, Plaintiff has failed to state a claim that Defendants deprived him of a liberty interest in travel.[10]

Insofar as Plaintiff alleges the deprivation of a protected interest in his reputation, *see Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971), "injury to reputation by itself [is] not a 'liberty' interest protected under the [Due Process Clause]." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991).  Rather, to show that reputational harm infringes a liberty interest, Plaintiff must satisfy the "stigma-plus" test. *See Paul v. Davis*, 424 U.S. 693, 710–12 (1976).  In particular, Plaintiff must aver plausibly that he suffered (1) a "stigma" from governmental action; "plus" (2) an alteration or extinguishment of "a right or status previously recognized by state law." *Id.*; *see also Evans v. Chalmers*, 703 F.3d 636, 654 (4th Cir. 2012).  The doctrine, however, requires *public* dissemination of defamatory information, rather than tightly controlled sharing within the government or private aviation carriers. *See Orange v. District of Columbia*, 59 F.3d 1267, 1274 (D.C. Cir. 1995)

---

[10] Plaintiff's allegations do not make any reference to enhanced security screening.  In any event, any such allegations would fail to state a claim, as courts have widely held that allegations of delay or screenings at security checkpoints do not unduly burden the right to travel. *See Ghedi v. Mayorkas*, 16 F.4th 456, 466 (5th Cir. 2021); *Elhady*, 993 F.3d at 222; *Abdi v. Wray*, 942 F.3d 1019, 1030-31 (10th Cir. 2019); *Beydoun*, 871 F.3d at 468; *Proctor v. DHS*, No. 18-70657, 2019 WL 4413273, at *1 (9th Cir. 2019); *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 535 (6th Cir. 2007); *Town of Southold*, 477 F.3d at 51; *Torraco v. Port Auth.*, 615 F.3d 129, 141 (2d Cir. 2010); *City of Houston v. F.A.A.*, 679 F.2d 1184, 1186–99 (1982).

(noting that "public disclosure" of the allegedly defamatory statements is required); *Doe v. Cheney*, 885 F.2d 898, 910 (D.C. Cir. 1989) (agency's action not stigmatizing because agency made no "public accusations that will damage [plaintiff's] standing and associations in the community"); *Mosrie v. Barry*, 718 F.2d 1151, 1157 (D.C. Cir. 1983) (must show "public stigma"); *cf. Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1113 (D.C. Cir. 1985)).

Here, Plaintiff has not sufficiently alleged any dissemination of his Deny Boarding status by TSA to the public (a watchlist status that no longer exists as to Plaintiff in any event). The most he alleges is that he was informed by airline personnel that he could not check in for flights. *See* Compl. ¶ 49 ("When he spoke to customer service at American Airlines, they told him he did not have clearance to fly"); ¶ 50 ("he spoke to United Airlines customer service, which told him that the Defendant TSA was not permitting Fuentes to fly"); ¶ 53 ("the Southwest customer service representative told him there was no way he would be allowed to fly that day.").

While Plaintiff does claim at one point in his Amended Complaint that "the airlines . . . informed Fuentes in front of other customers that he could not fly," Compl. ¶ 81, this allegation is not tied to any specific incident otherwise alleged in the complaint, and in any event would be insufficient to suggest any action on the part of TSA because it was a conversation he had with an airline customer service representative, not the agency. *See Kovac v. Wray*, 363 F. Supp. 3d 721, 753 (N.D. Tex. 2019) ("The court concludes that these allegations are insufficient, as they are not factual allegations sufficient to plead public stigmatization. Plaintiffs have not alleged that the TSA has disclosed to the general public their purported placement on a watchlist"); *see also Long v. Pekoske*, --- F.4th ---, 2022 WL 2336796, at * 7 (4th Cir. June 29, 2022) ("As with the watchlist, the government doesn't publicly disclose someone's No-Fly status."); *Tarhuni v. Holder*, 8 F. Supp. 3d 1253, 1275 (D. Or. 2014) (rejecting stigma claim based on Plaintiff's allegation that the

"ticketing agents told him 'in the presence of other travelers' and 'in front of other passengers' that he would not be permitted to board and that he should speak to TSA or the Embassy.'").

Apart from these defects, Plaintiff cannot establish the "plus" factor for such a stigma claim, which is typically described as a "change in legal status." *Mosrie*, 718 F.2d at 1161.  Plaintiff identifies no change in legal status that would support a stigma-plus claim.  *Beydoun*, 2016 WL 3753561, at *5; *Abdi v. Wray*, No. 2:17-cv-622, 2018 WL 1940411, at 3* (D. Utah Apr. 23, 2018). He has not alleged that his prior watchlist status caused him to suffer some type of negative consequences in terms of employment, the ability to obtain licenses or permits, or to purchase firearms – claims that in any event have been roundly rejected by courts.  *See Elhady*, 993 F.3d at 227 (no "plus factor" where "[t]he plaintiffs have not actually alleged an inability to gain employment, obtain permits or licenses, or acquire firearms" resulting from TSDS status); *Abdi v. Wray*, 942 F.3d 1019, 1034 (10th Cir. 2019) (no plus factor).  Further, he cannot use his prior status on the Deny Boarding List and temporary inability to fly via commercial aircraft to establish a plus, as he has been removed from that List.  And in any event, he cannot plausibly show a denial of his right to travel as a result of inclusion on that List given the available alternative modes of travel.  *See supra* pages 22-23.

### b.  The Available Procedures Are Constitutionally Adequate.

Even if Plaintiff had adequately alleged the deprivation of a protected interest, the redress procedures available to him pass constitutional muster.  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  *Mathews*, 424 U.S. at 334. Whether the process afforded is constitutionally adequate depends on balancing (1) "the private interest that will be affected by the official action"; (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute

procedural safeguards"; and (3) "the Government's interest," including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Gilbert v. Homar*, 520 U.S. 924, 931-32 (1997) (quoting *Mathews*, 424 U.S. at 335). Courts "generally have declined to establish rigid rules and instead have embraced a framework to evaluate the sufficiency of particular procedures" depending on "what the particular situation demands." *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005).

Even if Plaintiff had identified a constitutionally protected interest in travel specifically by commercial air, the private interest in that right is limited, given the availability of other modes of travel. And following his removal from the TSA Deny Boarding List on November 2, 2021, he, of course, was able to fly without TSA denying him boarding on account of placement on that List. By contrast, "[t]here is obviously a compelling government interest in preventing terrorist attacks against commercial aviation." *Mohamed v. Holder*, 266 F. Supp. 3d 868, 880 (E.D. Va. 2017); *see also Haig v. Agee*, 453 U.S. 280, 307 (1981) ("It is obvious and unarguable that no governmental interest is more compelling than the security of the Nation.") (cleaned up); *Al Haramain Islamic Foundation, Inc., v. Islamic Rep. of Iran,* 686 F.3d 965, 980 (9th Cir. 2012) ("[T]he government's interest in national security cannot be understated."). TSA's statutory authority to safeguard civil aviation and security is broad and well-established. *See Bonacci v. Trans. Sec. Admin.*, 909 F.3d 1155, 1161 (D.C. Cir. 2018) ("Congress has made TSA responsible for "security in all modes of transportation," 49 U.S.C. § 114(d), including "civil aviation security," *id*. § 114(d)(1)."). As the DC Circuit has held, "because Congress has entrusted TSA with broad authority over 'civil aviation security,' it is 'TSA's job—not ... ours— to strike a balance between convenience and security.' " *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d

26

1343, 1350 (D.C. Cir. 2014) (quoting *Suburban Air Freight, Inc. v. Transp. Sec. Admin.*, 716 F.3d 679, 683 (D.C. Cir. 2013) (citations omitted)).

As for the risk of erroneous deprivation, Plaintiff's minimal interest is properly protected by the government's existing procedures. An individual can be placed or maintained on a TSA Watch List based on intelligence, law enforcement information, or other available information indicating they are a threat to civil aviation and national security. *See supra* page 5. Additions are based on established criteria and are approved by the TSA Administrator or his or her designee. *Id*. TSA conducts periodic reviews to determine whether an individual should remain or be removed from a TSA Watch List. *Id*. Here, Plaintiff argues that he received inadequate notice about his placement on the TSA Deny Boarding List, about delays in processing his DHS TRIP inquiry, and that he had an insufficient opportunity to respond. Compl. ¶¶ 75-78. But on the contrary, Plaintiff was provided notice that he was considered a security threat, the primary reasons for that determination, and that he had been removed from the TSA Deny Boarding List. For example, the DHS TRIP response letter informed Plaintiff that his inclusion on the Deny Boarding List resulted from TSA's assessment that he "expressed an intent of carrying out or inciting an act that represents an imminent threat to the life of airline crew" based on statements he made in on the livestreaming platform expressing his "intent to harm flight attendants by apparent suffocation and/or shooting." Ex. 1. Had Plaintiff remained on the Deny Boarding List, he would have had the opportunity to seek judicial review of TSA's determination in a court of appeals. Consistent with other cases upholding the constitutionality of DHS TRIP redress procedures, this court should uphold the redress procedures applied to Plaintiff. *See Elhady*, 993 F.3d at 228-29 (upholding the constitutionality of DHS TRIP redress procedures in the context of TSDS enhanced security screening challenge); *Kashem*, 941 F.3d at 380 (similar in the No Fly List context).

Regarding Plaintiff's challenge to any delays in the administrative processing of his DHS TRIP inquiry, this claim should also be rejected because it is moot. *See Conservation Force, Inc. v. Jewel*, 733 F.3d 1200, 1205 (D.C. Cir. 2013) (due process claim for delayed agency action becomes moot once the action is taken). Moreover, complaints about administrative timeliness do not implicate the due process clause. *See Isaacs v. Bowen*, 865 F.2d 468, 477 (2d Cir. 1989) (19-month delay in adjudication of benefits appeal did not deny due process). Because Plaintiff received constitutionally adequate process through DHS TRIP, his procedural due process claim should be dismissed.

## 2. Count I (Substantive Due Process, Ninth Amendment) Should Be Dismissed.

Plaintiff generally alleges that TSA violated his right to interstate travel in violation of the Fifth, Ninth, and Fourteenth Amendments when TSA placed him on its Deny Boarding List. Compl. ¶¶ 66-72. Plaintiff also claims that his inability to travel because of this placement imposes burdens on the exercise of his other constitutional rights, primarily his First Amendment rights. *Id.* ¶ 70. Plaintiff fails to state a plausible claim for several reasons. As an initial matter, Plaintiff's Ninth Amendment allegations are superfluous because that Amendment "'is not a source of substantive rights, unless it is coupled with the denial of other fundamental rights.'" *Sheikh*, 77 F. Supp. 3d at 80 (quoting *Slaby v. Fairbridge*, 3 F. Supp. 2d 22, 30 (D.D.C. 1998)).

Second, Plaintiff fails to state a substantive due process claim because he does not allege that he has been deprived of a fundamental right. Substantive due process affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental, and courts are generally reluctant to expand the concept of substantive due process, as there are few clear guideposts for responsible decisionmaking. *Fraternal Ord. of Police v. D.C.*, 502 F. Supp. 3d 45, 60-61 (D.D.C. 2020); *Palko v. Connecticut*, 302 U.S. 319, 325 (1937); *Reno v. Flores*,

507 U.S. 292, 303 (1993). Plaintiff alleges that he has been denied his "fundamental constitutional right" to "interstate travel." Compl. ¶ 67. Plaintiff has not, of course, been restricted in his ability to travel within the United States by means other than commercial air travel (and of course now *can* travel by air without being denied boarding on account of inclusion on TSA's Deny Boarding List). As discussed above, the ability to travel by commercial aircraft is not a protected liberty interest for purposes of a procedural due process claim, *see supra* pages 22-23, much less falling within the narrower category of interests protected by substantive due process.

While under appropriate circumstances the freedom to travel interstate may be fundamental, the origins of this right "reflect a concern over state discrimination against outsiders rather than concerns over the general ability to move about." *Hutchins v. District of Columbia*, 188 F.3d 531, 536 (D.C. Cir. 1999) (*en banc*). And Plaintiff has not been deprived of the right to travel interstate or to migrate between states—at most, his ability to do so by one particular method of travel (commercial air travel) was restricted for less than ten months. But even during that time, he could still travel from one state to another by any means available, including car, train, boat, or otherwise, and Plaintiff has alleged no inability or unwillingness to do so. Moreover, as numerous courts have found, there is no right to travel by the most convenient means of transportation. *See supra* pages 22-23; *Elhady*, 993 F.3d at 222. Indeed, this intuition is supported by the numerous extant restrictions that might affect a person's ability to travel interstate by any particular means, like state driver's license requirements, emissions testing standards, or subway or bus fares, which are not generally subject to heightened scrutiny.

But even if the Court identified a fundamental right at stake, Plaintiff's past placement on TSA's Deny Boarding List would still pass scrutiny because the Government's actions have not been egregious, let alone so egregious as to shock the conscience. *Cf. Mohamed*, 266 F. Supp. 3d

at 883 (finding that the No Fly List is "necessary and sufficiently narrowly tailored to achieve a compelling government interest and therefore does not violate Plaintiff's substantive due process rights"); *Hasenfus v. LaJeunesse*, 175 F.3d 68, 74 (1st Cir. 1999) (Boudin, J.) (noting that successful substantive due process challenges against government officials often "involve manifestly outrageous behavior by the authorities certain to cause harm."). TSA's operation of the Deny Boarding List, as well as its criteria for placing individuals on this list, bear a close relationship to the aim of preventing threats to civil aviation and protecting national security. As Plaintiff is aware, his inclusion on the TSA Deny Boarding List resulted from TSA's assessment that he "expressed an intent of carrying out or inciting an act that represents an imminent threat to the life of airline crew" based on public streaming of statements expressing his "intent to harm flight attendants by apparent suffocation and/or shooting." Ex. 1. Plaintiff cannot plausibly establish that the Government's actions shock the conscience. *Cf.* 49 U.S.C. § 114(h)(3) (directing TSA "to identify individuals . . . who *may* be a threat to civil aviation or national security," and to take appropriate action including "prevent[ing] the individual from boarding an aircraft" (emphasis added)); *Aeronautical Repair Station Ass'n, Inc. v. FAA*, 494 F.3d 161, 178 n.10 (D.C. Cir. 2007) (noting "the public's manifest interest in aviation safety"). Accordingly, Plaintiff's substantive due process claim should be dismissed.

## B. Plaintiff's First Amendment Claims Fail.

Plaintiff also raises three First Amendment claims, none of which have merit. Plaintiff generally alleges that TSA placed him on the TSA Deny Boarding List based on his First Amendment activities, including his right to free speech, freedom of the press, and freedom of association. Compl. ¶¶ 85-102. Counts III-V appear to allege First Amendment retaliation as to those three activities, alleging that Plaintiff was placed on the Deny Boarding List based on his "constitutionally protected political speech and constitutionally protected hyperbole," Compl. ¶ 89

30

(Freedom of Speech), "because of his constitutionally protected activity as a journalist," Compl. ¶ 95 (Freedom of the Press), and "because of his constitutionally protected associations." Compl. ¶ 101.  To state a First Amendment retaliation claim, a plaintiff must plausibly allege that (1) he engaged in First Amendment-protected activity; (2) he was subjected to adverse action by Defendants that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a causal connection between the protected activity and Defendants' adverse action.  *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016).  With respect to causation, "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury.  Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."  *Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 46 (D.D.C. 2021) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)).

### 1.  Plaintiff Has Not Plausibly Alleged That His Prior TSA Deny Boarding List Placement Was Retaliation For Protected Speech.

Plaintiff's allegations do not present a viable retaliation claim under the Freedom of Speech or Freedom of the Press clauses.  As further discussed above, TSA placed Plaintiff on its Deny Boarding List after viewing videos in which he made graphic and violent threats to suffocate and/or shoot flight attendants.  In one video, Plaintiff stated: "don't come to flight attendant school tomorrow, . . .  I'm coming. I am going to open the door and everyone is going to [say] AHHHHH." Ex. 1 n.1.  He further stated, "You, you thought you could hide in the [bathroom] stall, I'm going to shake your hand too . . . through the stall door.  You think a stall door is going to stop me from shaking your hand?"

In an attempt to deflect blame from those and other violent threats, Plaintiff alleges he was at the U.S. Capitol during the January 6th insurrection and tries to link his political speech and

online media activities to his past placement on the TSA Deny Boarding List.[11]  This court should reject these conclusory allegations as failing to plausibly allege a First Amendment violation, as TSA explained that its decision to place him on its Deny Boarding List on January 12, 2021, resulted from the totality of available information, including open-source videos in which Plaintiff threatened violence against flight attendants.  This explanation for his placement was provided directly to Plaintiff in a letter, which constituted TSA's "final agency decision."  Ex. 1 at 2. Plaintiff presents no allegations calling TSA's valid explanation into question.  *See U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) ("[W]e note that a presumption of regularity attaches to the actions of Government agencies[.]"); *Comcast Corp. v. FCC*, 526 F.3d 763, 769 n.2 (D.C. Cir. 2008) ("We must presume an agency acts in good faith[.]"); *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573 (2019) (cautioning that "judicial inquiry into 'executive motivation' . . . should normally be avoided").

Moreover, to the extent that Plaintiff's presence at the US Capitol on January 6th was relevant to TSA's investigation and part of the "totality of available information" that led to his placement on the Deny Boarding List, it is well-established that First Amendment-protected activity may appropriately be considered by TSA in determining the threat that an individual poses to aviation security, without making the government's corresponding actions retaliatory.  For

_____

[11] It bears mentioning that, as shown in public proceedings by the House Select Committee to Investigate the January 6th Attack on the United States Capitol, Plaintiff on his livestream program also suggested that state legislators be shot if they refused to de-certify their state election results in favor of Donald Trump. On that livestream, Plaintiff asked "Why, because we had no leverage, what are we going to do?  What can you and I do to a state legislator, besides kill them?  Although we should not do that.  I am not advising that, but I mean, what else can you do, right?"  *See* https://www.npr.org/2022/06/21/1105848096/jan-6-committee-hearing-transcript.  This court can take judicial notice of Congressional proceedings for purposes of Rule 12(b)(6).  *See D.C. Fed'n of Civic Ass'ns v. Volpe,* 459 F.2d 1231, 1257–58 (D.C. Cir. 1971) (Congressional documents are matters of public record and thus subject to judicial notice).

example, in *George v. Rehiel*, 738 F.3d 562 (3d Cir. 2013), the Third Circuit held that the plaintiff had not alleged a valid claim for First Amendment retaliation where the TSA officials had asked Plaintiff questions about a book on U.S. foreign policy in the Middle East and Arabic-to-English language flash cards in Plaintiff's possession that contained, among other things, the words "bomb," "terrorist," "explosion," "attack," "battle," and "kill." *Id*. at 567. The Court noted that it was "beyond dispute that the First Amendment protects [plaintiff's] right to possess, read and study the flashcards." *Id*. However, the Court further concluded:

> The fact that [plaintiff] clearly had a right to have these flash cards, does not mean that TSA Officials had to ignore their content or refrain from investigating him further because of the words they contained. The totality of circumstances here could cause a reasonable person to believe that the items [plaintiff] was carrying raised the possibility that he might pose a threat to airline security. That suspicion was the reason for their increased level of scrutiny during the airport screening.

*Id*. at 586. Because the "suspicion" derived from that First Amendment activity "was an obvious alternative explanation for their conduct," it "negate[d] any inference of retaliation." *Id; see also American Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1290 (11th Cir.2010) ("Importantly, the Court held in *Iqbal,* as it had in *Twombly,* that courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s]', which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.") (citing *Iqbal,* 556 U.S. at 682). In short, it is not unlawful for officials to consider the content of speech or materials otherwise protected by the First Amendment in evaluating whether an individual is reasonably believed to pose a risk. *See Reichle v. Howards*, 566 U.S. 658, 668 (2012) (an officer "may decide to arrest the suspect because his speech . . . suggests a potential threat"). [12]

---

[12] Alternatively, apart from the fact that First Amendment-protected activity *may* appropriately be considered by TSA in the course of its mission to safeguard aviation security, at a minimum in this case it is clear that Plaintiff's First Amendment activities were not the but-for cause of his past placement on the Deny Boarding List. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("some

NAV

While Plaintiff references his broader activities as an online commentator and his political speech – including in the context of efforts to overturn the 2020 election, *see* Compl. ¶¶ 37-42 – he produces nothing more than naked, conclusory assertions that his placement on the Deny Boarding List was pretextual.  Insofar as Plaintiff is suggesting that the agency's stated rationale for his placement on the Deny Boarding List was pretextual, this is insufficient as a matter of elementary pleading practice.  *See Iqbal*, 556 U.S. at 678 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  As with other areas of law, such threadbare assertions in the First Amendment retaliation context amount to nothing more than an "unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678, and are patently insufficient to state a claim.  *See Hentz v. Ceniga*, 402 F. App'x 214, 215 (9th Cir. 2010) ("conclusory allegations of retaliation and the absence of evidence" tying governmental action to protected speech "insufficient to establish a trial issue as to [plaintiff's] retaliation claim"); *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 62 (D.D.C. 2019) ("Plaintiffs fail to provide more than conclusory allegations that the aim of Defendants' alleged conspiracy was to curtail Plaintiffs' First Amendment rights.").

Insofar as Plaintiff attempts to suggest that TSA's valid rationale tied to his threats against flight attendants was pretextual and that the agency was instead motivated by a dislike for his

---

official actions adverse to [the] speaker might well be unexceptionable if taken on other grounds"; it is only "when nonretaliatory grounds are in fact insufficient to provoke the adverse consequences . . . that retaliation is subject to recovery as the but-for cause of official action offending the Constitution."); *see also Harris v. Trustees of Univ. of D.C.,* 567 F. Supp. 3d 131, 155 (D.D.C. 2021) (for First Amendment retaliation claim, "protected speech must have been a substantial or motivating factor in prompting the retaliation."); *cf. Reichle,* 566 U.S. at 668 (noting, in context of law enforcement arrest, "the connection between alleged animus and injury may be weakened" by the officer's "wholly legitimate consideration of speech.").

political views or other activities apart from those threats, "[t]o put it generously, [plaintiff's] generalized, conclusory, and wholly unsupported allegations of agency bad faith fall short of the circumstances that would justify overcoming" the presumption of regularity "and concluding that [plaintiff] has discharged its burden of proof." *New Life Evangelistic Ctr., Inc. v. Sebelius*, 753 F. Supp. 2d 103, 125 (D.D.C. 2010). *Cf. Sledge v. D.C.*, 63 F. Supp. 3d 1, 19 (D.D.C. 2014) (Jackson, J.) (noting, in Title VII retaliation claim, "the court reviews each of the three relevant categories of evidence—prima facie, pretext, and any other—to determine whether they either separately or in combination provide sufficient evidence for a reasonable jury to infer retaliation."). Here, Plaintiff does not even allege – let alone in a facially plausible way – that the agency's plainly valid explanation of the justification for his placement on the Deny Boarding List was pretextual.

### 2. Plaintiff's Threatening Speech Was Not Protected First Amendment Activity.

In support of his First Amendment claims, Plaintiff's Amended Complaint states in a conclusory fashion that he was placed on the TSA Deny Boarding List "because of his constitutionally protected political speech and constitutionally protected hyperbole," Compl. ¶ 89, and his "constitutionally protected activity as a journalist." *Id.* ¶ 95.[13] But as noted *supra* pages 32-33, TSA could reasonably consider Plaintiff's activities – including those to which First Amendment protections likely attach – and determine that he was a threat to aviation security on the basis of the totality of available information. In other words, that Plaintiff engaged in certain protected First Amendment activity does not suffice to establish a *prima facie* of First Amendment retaliation where "[t]he totality of circumstances . . . could cause a reasonable person to believe

---

[13] Defendants accept for purposes of this motion and at the pleading stage that Plaintiff's online streaming conduct would suffice to make him a member of the press for purposes of First Amendment analysis.

that" Plaintiff's speech "raised the possibility that he might pose a threat to airline security."
*Rehiel*, 738 F.3d at 586.

Setting that point aside, it is well-established that certain categories of speech fall outside
the protection of the First Amendment, notably speech constituting obscenity, defamation, fraud,
true threats, and incitement.  *See U.S. v. Stevens*, 559 U.S. 460, 468-69 (2010); *Elonis v. U.S.*, 575
U.S. 723, 746 (2015); *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 388 (1992).  Here, Plaintiff's
threatening speech and press activities do not fall within the usual protections afforded by the First
Amendment, for two reasons.

*First*, his comments about using violence against flight attendants enforcing air carrier
masking requirements for travelers[14]—disseminated on his livestream platform and accessible to
a broad audience—constitute incitement.  That is, Plaintiff's speech was "directed to inciting or
producing imminent lawless action and [wa]s likely to incite or produce such action."
*Brandenburg*, 395 U.S. at 447.  As this court recently observed, though incitement cases are
somewhat rare, courts and some scholars have coalesced around a three-part test for determining
whether speech is not protected because it constitutes incitement: "(1) the speaker *subjectively
intended incitement*; (2) in context, the words used were *likely to produce* imminent, lawless
action; and (3) the words used by the speaker *objectively encouraged* and urged and
provoked *imminent* action."  *Thompson v. Trump*, No. 21-CV-00400 (APM), 2022 WL 503384, at

---

[14] The air carrier mask mandates that were the subject of Plaintiff's speech were superseded on
February 2, 2021 with a federal mask mandate, which is not currently in effect. *See CDC Statement
on Masks in Public Places*, April 20, 2022, https://www.cdc.gov/media/releases/2022/s0420-
masks-public-transportation.html (stating that, pending an appeal of a nationwide preliminary
injunction entered by a judge in the Middle District of Florida, wearing masks on indoor public
transportation systems is now "recommended" rather than required). Nor have U.S. air carriers
reinstated mask requirements that predated the federal requirement (other than to enforce mask
requirements on international flights where the foreign country has a mask mandate in place).

*41 (D.D.C. Feb. 18, 2022) (quoting 5 RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 20.15(d), Westlaw (database updated May 2021)); *see also Bible Believers v. Wayne County*, 805 F.3d 228, 246 (6th Cir. 2015) (*en banc*) (similar test).

Here, whether applying this precise test or evaluating "the key to the *Brandenburg* exception" as simply "whether the speech 'is directed to inciting or producing imminent lawless action and is likely to incite or produce such action,'" *Thompson*, 2022 WL 503384 at *41, looking at Plaintiff's words and their context, his speech was directed at encouraging or producing violence against flight attendants, including references that were a euphemism for shooting them and following them into the parking lot to suffocate them. *See* Ex. 1. That Plaintiff threatened that violence would occur "tomorrow," *see* Ex. 1 n.1, satisfied the requirements that the lawless action be both imminent and likely. Plaintiff's speech was also likely to incite or produce imminent lawless action given that it was accessible to hundreds of thousands of viewers.[15]

Moreover, his comments came against the backdrop of heightened tensions related to public health guidelines pertaining to Covid-19 and the requirement that travelers wear masks, rendering it much more likely that any encouragement of violence against flight attendants for enforcing such mandates would indeed result in such violence. As has been widely publicized, airlines and the federal government struggled with unruly passengers on airplanes, including some whose misconduct was related to enforcement of the mask mandates. *See* Federal Aviation

---

[15] As mentioned *supra* note 11, Plaintiff's encouragement of violence also extended to efforts to overturn the 2020 election – that is, to the very political speech activities he claims as the predicate for his First Amendment retaliation claim in this case. *See* https://www.npr.org/2022/06/21/1105848096/jan-6-committee-hearing-transcript (noting to his viewers that "what else can you do" besides "shoot" a "state legislator" that didn't agree to de-certify election results.).

Administration, 2021 Unruly Passenger Data | Federal Aviation Administration (faa.gov) (last accessed July 21, 2022) (noting that in 2021, the Federal Aviation Administration proposed $5 million in fines against unruly passengers, with 4,290 mask-related incidents reported). This environment prompted the Federal Aviation Administration (FAA) to adopt a zero-tolerance policy towards unruly passenger behavior on January 13, 2021. Then-FAA Administrator Dickson directed "legal enforcement against any passenger who assaults, threatens, intimidates, or interferes with airline crew members" on account of the disturbing increase in incidents where airline passengers had disrupted flights with threatening or violent behavior stemming from refusals to wear masks and the violence at the U.S. Capitol. *See* Federal Aviation Administration Adopts Stricter Unruly Passenger Policy (Jan. 13, 2021), *available at* https://www.faa.gov/newsroom/federal-aviation-administration-adopts-stricter-unruly-passenger-policy (last accessed July 21, 2022).

Plaintiff undoubtedly was aware of such incidents. Indeed, on December 4, 2020, he publicly tweeted about one such encounter he himself had with a flight attendant for refusing to wear a mask correctly, which resulted, according to Plaintiff, in him being removed from the aircraft. During that encounter, Plaintiff claims to have "got[ten] up and looked [the flight attendant] in the eyes and said 'hey – fuck you.'" *See* Archived Tweet, https://web.archive.org/web/20201206064027/https://twitter.com/NickJFuentes/status/133494999 3598291970?ref_src=twsrc%5Etfw.[16]  Given this experience and his own status as a political commentator, his decision to further promote such unlawful behavior – with its corresponding

---

[16] It is well-established that the court can take judicial notice of Plaintiff's social media post as there is no debate as to its authenticity. *See United States v. Flynn*, 507 F. Supp. 3d 116, 126 n. 6 (D.D.C. 2020) ("The Court takes judicial notice of President Trump's tweet as the veracity of this statement 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" (quoting Fed. R. Evid. 201(b)).

threats to flight attendants – renders his speech the precise type of "advocacy intended, and likely, to incite imminent lawless action," *United States v. Alvarez*, 567 U.S. 709, 717 (2012), that is not protected by the First Amendment.  Indeed, TSA's explanation to Plaintiff of his past placement on the Deny Boarding List effectively tracks the *Brandenburg* standard: "TSA determined that you were an individual who expressed an intent of carrying out or inciting an act that represents an imminent threat to the life of airline crew and your expression of intent appeared, under the circumstances, to be *likely to incite or produce such action*." Ex. 1 at 1 (emphasis added).  Under the circumstances, that security assessment was eminently reasonable, and Plaintiff's threats against flight attendants and aviation security are not protected under *Brandenburg*.

*Second*, even if the speech in question were protected under *Brandenburg*, Plaintiff's speech and press activities are undeserving of First Amendment protection because they constituted true threats; Plaintiff communicated "'a serious expression of an intent to commit an act of unlawful violence to'" flight attendants.  *U.S. v. Syring*, 522 F. Supp. 2d 125, 129 (D.D.C. 2007) (quoting *Black*, 538 U.S. at 359).  In *Black,* the Supreme Court defined true threats as "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." 538 U.S. at 359 (citations omitted).  Courts "have determined that alleged threats must be analyzed in light of [their] entire factual context, and have specified factors to be considered, including: the reaction of the recipient of the threat and of other listeners; whether the threat was conditional; whether the threat was communicated directly to its victim; whether the maker of the threat had made similar statements to the victim in the past; and whether the victim had reason to believe the maker of the threat had a propensity to engage in violence."  *Syring,* 522 F. Supp. 2d at 130.

Here, even setting to the side whether Plaintiff's promotion of violence and unlawful action to his viewers might have constituted incitement, he *personally* made threats against flight attendants and suggested that he was likely to take unlawful and violent action against flight attendants during his own travel.  Nothing about the threats was conditional because airline personnel at the time were *required* to enforce their employer's mask mandate, the apparent basis for Plaintiff's threats.

Although Plaintiff stated that he was joking, his words did not constitute mere political hyperbole.  *See Syring*, 522 F. Supp. 2d at 130.  Moreover, TSA had good reason to doubt the sincerity of Plaintiff's claim that he was joking and instead appropriately concluded that the "just joking" caveat was an insincere effort to disclaim possible liability, rather than a genuine attempt at humor. For example, on another publicly-available livestream broadcast in 2020, Plaintiff himself stated that "[i]rony is so important for giving a lot of cover and plausible deniability for our views." *See* National Public Radio, *How Extremists Weaponize Irony To Spread Hate*, Apr. 26, 2021, *available at* https://www.npr.org/2021/04/26/990274685/how-extremists-weaponize-irony-to-spread-hate. In that same video, Plaintiff cited holocaust denial as an example of a subject where irony or humor can provide cover to the speaker, and stated "when it comes to a lot of these issues, you need a little bit of maneuverability that irony gives you." *Id.*  TSA indeed specifically informed Plaintiff in the Final Determination Letter that it had "considered your comments in which you stated you were joking," Ex. 1 n.1, but "determined that you warranted placement on TSA's Deny Boarding List in light of the graphic and violent nature of your threats directed toward flight attendants, which contributed to TSA's assessment that you intended to convey a threat by making these statements and were likely to incite or produce such imminent lawless action." *Id.*

TSA could justifiably evaluate the totality of the circumstances and exercise common sense to conclude that he was being insincere in stating that he was joking.

In short, neither TSA nor this court is "required to exhibit a naiveté from which ordinary citizens are free," *United States v. Stanchich*, 550 F. 2d 1294, 1300 (2d Cir. 1977) (Friendly, J.), and because the claims to hyperbole and humor were objectively a transparent ruse to avoid liability or accountability for encouraging violence and lawlessness, the court need not credit them.

### 3. Count V (Freedom of Association) is Baseless.

With respect to the Freedom of Association claim, the Amended Complaint does not even recite the elements of the claim, much less provide factual allegations that would give rise to a plausible inference of liability, as the law requires. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

"In the First Amendment context, the right to associate is not a free-standing right; rather, one has the right to associate for the purpose of engaging in activities protected by the First Amendment." *Chula Vista Citizens for Jobs & Fair Competition v. Norris*, 755 F.3d 671, 676 (9th Cir. 2014) (citing *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647–48 (2000); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984)). Plaintiff identifies no protected activities that are allegedly infringed by his former placement on TSA's Deny Boarding List, apart from the naked assertion of the "right" "to associate, or not to associate, with whom he pleases." Such a claim is insufficient and should be dismissed. While Plaintiff includes in his Amended Complaint a number of factual allegations relating to his political activities and associations, *see* Compl. ¶¶ 2, 37-42, he advances nothing but the most conclusory allegations linking those activities to his prior placement on the TSA Deny Boarding List.

For that reason, the First Amendment Freedom of Association claim (Count V), should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion and dismiss the Amended Complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6).

Dated: July 21, 2022                                     Respectfully Submitted,


BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General
Civil Division

BRIGHAM J. BOWEN
Assistant Director, Federal Programs
Branch

*/s/ Alexander N. Ely*
ALEXANDER N. ELY
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St NW
Washington, DC 20530
Tel: (202) 616-8244

*Counsel for Official Capacity Defendants*

## CERTIFICATE OF SERVICE

I certify that on July 21, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent e-mail notification of such filing to all CM/ECF participants.

/s/ Alexander N. Ely
Alexander N. Ely

*Counsel for Official Capacity Defendants*