UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NICHOLAS FUENTES, | : | |
| | : | |
| *Plaintiff,* | : | Dkt. No.: 1:21-cv-03106 (APM) |
| v. | : | |
| | : | |
| JOSEPH R. BIDEN, JR., | : | |
| MERRICK GARLAND; | : | |
| CHRISTOPHER WRAY; ANTONY | : | |
| BLINKEN; ALEJANDRO MAYORKAS; | : | |
| LOUIS DEJOY; DAVID P. PEKOSKE; | : | |
| STEVE DICKSON; LLOYD AUSTIN; | : | |
| THE TRANSPORTATION SECURITY | : | |
| ADMINISTRATION OF THE UNITED | : | |
| STATES, JOHN DOE; | : | |
| | : | |
| *Defendants.* | : | AUGUST 24, 2022 |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

Like many Americans, the plaintiff arrived at an airport one day intending to travel. He was confronted with a Kafkaesque nightmare: He would not be permitted to board; he would not be told why; federal authorities had determined he was a flight risk, and reasons for that determination were to be kept for him reasons, presumably related to the need to keep the methods and criteria used for determining whether to permit a person to board an aircraft secret. He challenged his placement on the Transportation Security Administration's Deny Boarding List, and was kept in limbo for months. After this suit was filed, he was informed that he is no longer on the list. He was placed on the list, the TSA informs the Court, because he "made threats to suffocate and/or shoot flight attendants on a publicly-available online streaming platform." Somehow the so-called threats were sufficient to ground the plaintiff one day, but not, after suit was filed, next. The plaintiff contends in his complaint that he was placed on the list for political

1

reasons relating to his receipt of cryptocurrency from a right-wing figure overseas, his participation in the January 6, 2021 rally at the Capitol, and his political advocacy.

This standardless, secretive and ad hoc decision to ground the plaintiff could just as easily be revived tomorrow. The plaintiff filed suit in this Court seeking injunctive and declaratory relief on grounds that this injury he suffered, though now arguably moot, is capable or repetition at any time for any reason.[i] The suit is intended to make transparent a secretive process the plaintiff violates his right to travel, his right to due process of law, and various rights secured under the first amendment. He further contends he was targeted for his political views; he is described in the press, and by no less an "authority" than the Southern Poverty Law Center, as:

> a white nationalist livestreamer who advocates pulling the Republican Party further to the extreme far-right end of the political spectrum. An outspoken admirer of fascists such as Mussolini, Fuentes emerged as an influential figure on the national stage during the now-infamous "Stop the Steal" movement, which relied on misinformation to falsely claim that Donald Trump had won the 2020 election and sought to overturn the results of it. Some Republican lawmakers have collaborated with his America First Foundation, which hosts an annual America First Political Action Conference (AFPAC) alongside the more mainstream Conservative Political Action Conference (CPAC), which it seeks to supplant.

https://www.splcenter.org/fighting-hate/extremist-files/individual/nick-fuentes. See also, "Far Right Extremists Find An Ally In Congressman from Arizona, *The New York Times*, July 6, 2021, the opening sentence of begins: 'Nick Fuentes, the leader of a white nationalist group,…" If, as the plaintiff contends, the TSA is targeting individuals for restricted travel based on their political and associational affiliations, the result is shocking. Mr. Fuentes contends his right to travel was restricted for political reasons, and that the stated reason he was grounded in the first instance remains as much of a reason to ground him today as it did the day he was first and secretly removed from the

list. What's more, he does not know whether he remains on some other secret list maintained by the TSA. He seeks transparency and an order assuring him that he will retain the right to travel and to not have his liberty restricted by federal officials on account of political beliefs, ideas and affiliations.

The defendants move to dismiss on several grounds:

First, he has not alleged an jury that is ongoing or immanent.

Second, his exclusive remedy is the United Stated Court of Appeals for the D.C. Circuit.

Third, the plaintiff has no federally protected right to travel or has otherwise not adequately pleaded claims.

The Government's arguments should be rejected and the matter should proceed to a hearing.

### I.     The Issue Is Not Moot; Mr. Fuentes Has Standing; Nothing Prevents The TSA From Doing This Again Tomorrow, Or Any Day Thereafter

Mr. Fuentes contends that a trial is necessary to make a record as to what standards are applicable and what process is relied upon by the TSA in making decisions about when and whom to declare too toxic to fly. He was turned away from his flight without notice or an opportunity to be heard at great hardship and expense. When he appealed through administrative process the appeal lingered for months. When he was told he could fly again and was given the reasons for his grounding appear to be as valid today as they were the restrictions were imposed. What prevents the TSA from deciding the day after this action is concluded that it can impose this cycle all over again?

The action is far from moot. The TSA can manipulate secret proceedings to evade review every time, by keeping a watchlist of politically "suspect" travelers, restricting their right to travel, dragging out the appeal process, and then declaring a petitioner is free to travel on the cusp of judicial review. Once that cycle has run its course, the TSA can again the classify a person as too toxic to fly. This is not mere conjecture. A recent report by the Office of Inspector General notes that individuals are subject to multiple stops even after they should have been removed from the no-fly list. U.S. Depart. Of Justice Office of the Inspector Gen. Audit Division, he Federal Bureau of Investigation's Terrorist Watchlist Nomination Practices, Audit Report 09-25, 59 (May 2009), available at http://www.justice.gov/oig/reports/FBI/a0925/final.pdf. Cited at Lowe, Dan, The Flap with No Fly – Does the No Fly List Violate Privacy and Due Process Constitutional Protections, *University of Detroit Mercy Law Review*, Vol. 92:157, 177 (2015) ("the OIG notes that nearly fifteen percent of individuals who should have been removed from the watchlist were unnecessarily delayed by frontline airline personnel more than six times.").

The Supreme Court has long recognized an exception to the mootness requirement for cases that are "capable of repetition, yet evading review." *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007). See*, e.g.*, *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016); *Turner v. Rogers*, 564 U.S. 431, 439–41 (2011*); Davis v. FEC*, 554 U.S. 724, 735–36 (2008); *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007); *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 774 (1978); *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 165 n.6 (1977); *Neb. Press Ass'n*

*v. Stuart*, 427 U.S. 539, 546–47 (1976); *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975).

The defendants' brief recites *Brandenburg v. Ohio*, 395 U.S. 44 (169) and *Virginia v. Black*, 538 U.S. 343 (2003) in talismanic fashion suggesting, somehow, that the TSA has unbridled authority to determine when a person's non-flight-related conduct constitutes either incitement to violence or a true threat. (Plaintiff's Brief, p. 3). In fact, both cases defeat the very purpose for which they are recited. *Brandenburg* overturned a conviction for incitement on first amendment grounds because the speech posed no imminent threat of violence. Similary, *Black*, on first amendment groups, overturned a criminal conviction for cross-burning because the expressive activity was not protected political speech and there did not pose a true threat. These cases underscore the urgency of judicial review of the secret and standardless TSA regime.

As *Black* teaches:

> 'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals…. The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats 'protects individuals from the fear of violence' and from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.' Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.

*Black,* 360-59. (Internal cites omitted); *see also Watts v. United States*, 394 U.S. 705, 708 (1969)(political hyperbole is not a true threat); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992). *Black* turned on a Virginia cross-burning statute: the statute outlawed cross burning with the intent to intimidate and stated that the burning of a cross was

*prima facie* evidence of an intent to intimidate. *Id*. 348. It relied on two fact patterns, consolidated into one appeal: in the first, a leader of the Klu Klux Klan burned a cross at a Klan rally; in the second, a man burned a cross in his black neighbors' yard in retaliation for those neighbors complaining about his use of his back yard as a firing range. The Supreme Court held that there was no doubt that a state could lawfully proscribe cross burning *with the intent to intimidate a person*—hence burning a cross in a black neighbor's yard was illegal. *Id*. 362-63 (majority)(emphasis added). However, a plurality of the Court held that the *prima facie* evidence provision of the statute was unconstitutional because cross burning in the context of a political rally could constitute protected expression. *Id*. 363-68. The question of intent was critical to the *Black* court's analysis. There is no universe of facts in which Mr. Fuentes speech could be deemed a true threat.

In, *Brandenburg v. Ohio*, 395 U.S. 444 (1969)(per curiam) the Court went so far as to conclude that a person may advocate violent or lawless overthrow of the government: "the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Black*, supra, 538 U.S. at 359 quoting *Brandenburg*, supra, 395 U.S. at 447.

> In the seminal case of *Brandenburg*…the Supreme Court held that abstract advocacy of lawlessness is protected speech under the First Amendment. Although the Court provided little explanation for this holding in its brief *per curiam* opinion, it is evident that Court recognized from our own history that such a right to advocate lawlessness is, almost paradoxically, one of the ultimate safeguards of liberty. Even in a society of laws, one of the most indispensable freedoms is that to express in the most impassioned terms the most passionate disagreement with the laws themselves, the institutions of, and created by, law,

and the individual officials with whom the laws and institutions are entrusted. Without the freedom to criticize that which constrains, there is no freedom at all.

The plaintiff has not failed to state a claim. Rather he has stated a claim of particular urgency and this Court should permit the matter to advance to discovery and an evidentiary hearing. The claims he raises are far from speculative. He seeks declaratory relief so that no one in a position of federal authority can seek to enforce this secret screening process. He names individual defendants in a position of authority to enjoin them from issuing orders circumventing an order of this Court. It is premature and requires discovery to determine whether some of the individuals should be dismissed simply because they can manipulate the administrative review process to evade review by claiming mootness.

II. **A Claim For Money Damages For Retrospective Relief Must Be Taken To The Appellate Court; The Appellate Court Appears To Lack Jurisdiction For Claims For Prospective Relief, Thus Leaving This Court As The Appropriate Forum In Which To Seek Relief**

The defendants contend that exclusive jurisdiction for review of an "order" of the TSA is reposed in the D.C. Circuit pursuant to 49 U.S.C. Section 46110(a),(c). Defendant's Brief, p. 17. They are correct, but their assertion misses the point. The plaintiff here is not seeking review of an order. He filed an appeal in the D.C. Circuit, but apparently missed a filing deadline. That appeal was dismissed but its focus was entirely retrospective. The plaintiff here seeks prospective relief challenging the ability of the TSA to make orders in the manner in which it does. The plaintiff seeks equitable relief governing future conduct, not money damages to compensate for past harm.

Even if the plaintiff were seeking money damages in this case, this Court would still have jurisdiction because the plaintiff named non-TSA employees in this complaint.

In *Kashem v. Barr*, 941 F.3d 358 (9th Cir. 2019) the Ninth Circuit held that a District Court had jurisdiction so long has a non-TSA employee was a final decision maker. In *Kashem*, an FBI decision maker was in the loop, and not an employee of the TSA. While the no-fly policies have since been amended to exclude non-TSA employees from the policy-making loop, the plaintiff contends that this Court has jurisdiction to hear a claim for prospective and injunctive relief as other members of the Executive Branch who are in a position to issue orders to the TSA to cease and desist from unlawful practices.

### III. The Plaintiff Contends That He Has, And Seeks To Preserve A Claim That He Has, A Privacy Interest, A Fundamental Right To Travel, And A Liberty Interest And This Has Claimed

The right to reveal by highway and other instrumentalities of interstate travel is clearly established. *Saenz v. Roe*, 526 U.S. 489, 500-01 (1999). "The right to travel embraces three different components: the right to enter and leave another State; the right to be treated as a welcome visitor while temporarily present in another State; and, for those travelers who elect to be become permanent residents, the right to be treated like other citizens of that state." Id. The right to travel is part of the liberty that cannot be deprived without due process of law. *Kent v. Dulles*, 357 U.S. 116, 125 (1958).

The right air travel domestically is apparently not a fundamental right, although just why that is so remains a mystery. As a District Court observed in the e case of *Latif v. Holder*, 969 F. Supp. 2d 1293 (D.Or. 2013) "the Constitution does not ordinarily guarantee the right to travel by any particular means of transportation, given that other forms of travel usually remain available." Id, 1303. But the Court noted that internationally, air travel is the only practical alternative. The Latif court went on to note:

8

"[t]he impact on a citizen who cannot use a commercial aircraft is profound. He is restricted in his practical ability to travel substantial distance within a short period of time, and the inability fly to a significant extent defines the geographical area in which he may live his life,." Id. Restricted travel can have a profound impact on a person's employment, visit family, attend schools and engage in the wide and rich variety of activities associated with daily life. The plaintiff contends here that domestic travel is a fundamental right no different than the right to travel in general.

The plaintiff does not contend that the government can never restrict his travel by air. It contends, simply, that doing so in this secretive manner and without any form of notice or opportunity to be heard is eerily inconsistent with the principled norms of republican government and due process. Yes, he has alternative means of travel. Yes, the government can assure air traffic safety by reviewing travelers. But to contend that all this can be done in secret with the information sprung on an unwary traveler at the departure gate, and that the government can then wait months to provide any information about how or why this happened, is inconsistent with ordered liberty.

IV.  **Conclusion**

The motion to dismiss should be denied insofar as the government claims the plaintiff fails to recite a protected interest. The case should proceed to discovery.

>THE Plaintiff
>/s/ Norman A. Pattis /s/
>NORMAN A. PATTIS, ESQ.
>PATTIS & SMITH, LLC
>383 Orange Street
>New Haven, CT 06511
>Tel: (203) 393-3017
>Fax: (203) 393-9745
>npattis@pattisandsmith.com

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that, on the foregoing date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ Norman A. Pattis /s/

---

[i] Only one defendant, an as yet unidentified "John Doe" complainant are sued in their official capacities only; the TSA itself cannot be sued for money damages on sovereign immunity grounds.