**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NICHOLAS FUENTES,

      *Plaintiff,*

v.

JOSEPH R. BIDEN, JR., *et al.*,

      *Defendants.*

Case No. 1:21-cv-03106 (APM)

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OFFICIAL CAPACITY DEFENDANTS' MOTION TO DISMISS
<u>PLAINTIFF'S AMENDED COMPLAINT</u>**

**INTRODUCTION**

Plaintiff seeks to challenge his prior placement on the TSA Deny Boarding List. He is no longer on that list, having been removed prior to commencement of this action. Plaintiff's Opposition to the Official Capacity Defendants' Motion to Dismiss, *see* ECF No. 18 ("Opp"), fails to present a compelling argument that this Court has jurisdiction over Plaintiff's claims, and fails almost entirely to engage with the applicable legal standards for his claims or demonstrate how his claims are viable. The Court should dismiss this case.

**I.    NO LIVE ARTICLE III CASE OR CONTROVERSY IS PRESENTED BY PLAINTIFF'S COMPLAINT**

As noted in the Government's Motion to Dismiss, this Court lacks subject matter jurisdiction over Plaintiff's Amended Complaint because he lacks standing. Plaintiff cannot invoke the jurisdiction of this court unless he "can show 'a personal stake in the outcome of the controversy.'" *Gill v. Whitford,* 138 S. Ct. 1916, 1929 (2018) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). A plaintiff's standing to sue "is a threshold jurisdictional question." *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1021 n.3 (D.C. Cir. 1998). At its "irreducible constitutional minimum," the doctrine requires satisfaction of three elements: (1) a concrete and particularized injury-in-fact, either actual or imminent, (2) a causal connection between the injury and defendant's challenged conduct, and (3) a likelihood that the injury suffered will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

Here, Plaintiff was removed from the TSA Deny Boarding List on November 2, 2021, and filed his Amended Complaint on May 2, 2022.[1] Therefore, the injury he suffered—if any—was a

---

[1] Plaintiff's Original Complaint in this action was filed on November 23, 2021, *see* ECF No. 1 – also after he had been removed from the Deny Boarding List.

past injury at the time he filed his Amended Complaint (and indeed also when filed his Original Complaint), and past injuries are insufficient to sustain standing to pursue prospective injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). No other theory of injury apart from his one-time placement on the Deny Boarding List is advanced in the Amended Complaint. Therefore, Plaintiff lacked standing from the moment this lawsuit and the operative pleading were filed.

### A. Standing, Not Mootness, Is the Relevant Inquiry.

As catalogued in detail in Defendants' opening brief, *see* Official Capacity Defendants' Memorandum in Support of Motion to Dismiss, ECF No. 17 ("Def's Mem.") at 11-13, Plaintiff cannot rely on past injuries to seek prospective injunctive relief. Rather, to pursue a prospective injunctive remedy, Article III requires that a plaintiff demonstrate harms that are ongoing or imminent. *See Lyons*, 461 U.S. at 105; *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Plaintiff does not appear to refute any of Defendants' standing arguments in his opposition brief. Indeed, apart from a clause in Subheading I on page 3—in which he states that "Mr. Fuentes Has Standing"—Plaintiff does not engage with any of the relevant case law or demonstrate how he has standing to seek prospective injunctive relief here. Instead, Plaintiff appears to argue that he has a live case or controversy through the prism of the mootness doctrine.

However, standing remains the relevant justiciability doctrine because Plaintiff was removed from the Deny Boarding List before he filed his operative complaint and thus did not have an actionable injury when the Complaint was filed. *See Nat. L. Party of U.S. v. Fed. Elec. Comm'n*, 111 F. Supp. 2d 33, 40 (D.D.C. 2000) ("Standing is determined at the time the complaint is filed, while mootness ensures that the requisite personal stake necessary at the outset of litigation continues throughout its course."). Indeed, his removal from the Deny Boarding List predated the

2

litigation as a whole, as his Original Complaint was filed on November 23, 2021, *see* ECF No. 1, and he was removed from the list on November 2, 2021.[2] The mootness doctrine only "comes into question when 'circumstances . . . destroy the justiciability of a suit previously suitable for determination.'" *Am. Postal Workers Union v. U.S. Postal Serv.,* 422 F. Supp. 2d 240, 247 (D.D.C. 2006) (quoting 13A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3533 (2d ed. 1984)). *See also Arizonans for Official English v. Arizona,* 520 U.S. 43, 68 n. 22 (1997) ("Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness))."

In this case, mootness is not relevant because nothing has changed during the course of the litigation with respect to Plaintiff's alleged injury. He did not have standing at any point since he filed this lawsuit, and he does not have standing today. He simply has no actionable injury or claim, and thus no basis to invoke the jurisdiction of this court.

Plaintiff does allege that, on March 19, 2022, after initiating this action, he attempted to board a flight at Midway Airport in Chicago and was unable to do so. *See* Am. Compl. ¶¶ 63-65. However, as explained in the attached Declaration of Russell Vieco, Plaintiff's difficulties that day resulted from a technical issue: Southwest Airlines was unable to print his boarding pass due to its own technical difficulties, and not because of any action on the part of TSA. As noted in the

---

[2] While there is some tension in the case law on the question of "whether the date of the commencement of an action or the date of the operative complaint is the relevant date for determining standing," *G&E Real Est., Inc. v. Avison Young-Washington, D.C., LLC*, 168 F. Supp. 3d 147, 159 (D.D.C. 2016) (discussing cases), for practical purposes it is not relevant here which date the court chooses, since Plaintiff lacked standing at the time he filed both complaints, given that his removal from the Deny Boarding List predated the onset of this litigation.

3

transcript attached to the Vieco Declaration, TSA did not deny him boarding that day and specifically informed Southwest Airlines that it could print Plaintiff a boarding pass.[3] Plaintiff therefore cannot rely on this March 19, 2022 incident to support standing related to his past Deny Boarding status.

### B. Assuming *Arguendo* That Mootness Principles Were Relevant, Plaintiff's Claims Would Be Moot and Non-Justiciable.

Should the court decide to evaluate this case through the lens of mootness, Plaintiff's claims would still not be fit for judicial resolution. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt,* 455 U.S. 478, 481 (1982) (*per curiam*)). Thus, even if there were a live controversy when the case was filed—and there was not—courts should refrain from deciding claims if "the requisite personal interest that must exist at the commencement of the litigation" is no longer present. *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67-68 & n.22 (1997).

While Plaintiff appears to be at war with himself on this issue—*compare* Opp. at 2 (noting that "this injury he suffered" is "now arguably moot") *with* Opp. at 4 ("[t]he action is far from

---

[3] The Vieco Declaration contains certain *ex parte*, *in camera* material marked as Sensitive Security Information ("SSI") that provides additional evidence bearing on the jurisdictional issues before the Court. Defendants have filed a redacted version of this Declaration on the public docket. This Court has the authority to consider this *ex parte* material to decide a factual challenge to the sufficiency of a complaint under Rule 12(b)(1). *See Scherfen v. U.S. Dep't of Homeland Sec.*, No. 3:08-cv-1554, 2010 WL 456784, at *4, 7-8 (M.D. Pa. Feb. 2, 2010). *Cf. Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004) ("the court has inherent authority to review classified material *ex parte*, *in camera* as part of its judicial review function."). Given that this declaration is being filed in connection with Defendants' reply brief, Defendants do not object to Plaintiff filing a supplemental response on this issue and are willing to meet-and-confer with Plaintiff on an appropriate schedule.

4

moot")—his first instinct is correct: Plaintiff is no longer on the Deny Boarding List, so to the extent he ever had a claim, he no longer does, and the case is moot.

The same result obtains, moreover, under the "voluntary cessation" doctrine apparently invoked by Plaintiff. *See* Pls.' Opp. at 4 (suggesting that TSA can "declare a petitioner is free to travel on the cusp of judicial review."). Setting aside the obvious temporal problem with this argument—he was removed from the Deny Boarding List on November 2, 2021, *before* Plaintiff filed his *first* complaint in this litigation, *see* ECF No. 1 (November 23, 2021), and so TSA could not have possibly removed him from the List to avoid ongoing litigation—this exception to mootness would not apply here. This rule "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001). But "there is an important exception to this important exception [to mootness,]" that applies where the agency "can demonstrate that there is no reasonable expectation that the allegedly unlawful conduct will recur." *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric. & Animal & Plant Health Inspection Serv.*, 918 F.3d 151, 157 (D.C. Cir. 2019) (quotation omitted). Further, this doctrine is applied "in light of the presumption of legitimacy accorded to the Government's official conduct." *Id.* (quoting *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004)); *see also Dep't of State v. Ray,* 502 U.S. 164, 179 (1991) (emphasizing that courts "generally accord Government records and official conduct a presumption of legitimacy"); *Grutzmacher v. Howard Cty.*, 851 F.3d 332, 349 (4th Cir. 2017) (relying on the "formal assurances" made by the government's declarant, to the effect that challenged government action would not be re-instated, to affirm dismissal based on mootness). Here, TSA has amply demonstrated, and communicated to the Plaintiff, that he will not be placed back on the Deny Boarding List based on currently available information. *See* Def's

5

Mem., Ex. 1 at 2 (Final Determination Letter); *see also* Vieco Decl. ¶ 14 ("TSA will not place Fuentes back on TSA's Deny Boarding List based on the currently available information.").

Finally, the "capable of repetition, yet evading review" exception to mootness cited by Plaintiff, *see* Opp. at 4, is equally inapplicable. That exception, as noted in the very case cited by Plaintiff, "applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462 (2007) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). Here, plaintiff—as the same "complaining party"—cannot establish that he will be subject to placement on TSA's Deny Boarding List again. Indeed, TSA informed Plaintiff in the Final Determination Letter that "TSA will not place you back on TSA's Deny Boarding List based on currently available information." Def's Mem., Ex. 1 at 2; *see also* Vieco Decl. ¶ 14 ("TSA will not place Fuentes back on TSA's Deny Boarding List based on the currently available information."). *See Long v. Pekoske,* 38 F.4th 417, 420, 426 (4th Cir. 2022) ("we agree with the government that removing" plaintiff from a no-fly list, where the government "avowed that it won't reinstate him based on currently available information . . . 'completely and irrevocably eradicated the effects of the alleged [constitutional] violation[s]," in turn mooting his claims) (quoting *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979)).

Moreover, as noted in Defendants' opening memorandum, Plaintiff's one-time placement on the Deny Boarding List was linked to violent threats he made against flight attendants who were enforcing the then-operative mask mandate for commercial air travel in connection with the Covid-19 pandemic. Def's Mem. at 6-7, 37. However, that mandate is no longer in effect, and there is thus no "reasonable expectation," *Wisconsin Right to Life*, 551 U.S. at 462, that he would

6

be subject to placement on the Deny Boarding List based on similar factual circumstances in the future. Therefore, even if the mootness doctrine were relevant, Plaintiff could not rely on this exception to mootness.

### C. Plaintiff Has Forfeited Any Argument That He Was Harmed By Several Named Defendants.

As noted in Defendants' opening motion, Plaintiffs' Amended Complaint names a number of official capacity defendants whose connection to Plaintiff's alleged injuries (however unactionable they may be in any event) is not spelled out in the Amended Complaint. *See* Def.'s Mem. at 15 (noting that Plaintiff's Amended Complaint "contains no well-pleaded facts tying any harms suffered by Plaintiff to the following named government official defendants: President Joseph R. Biden, Jr., Attorney General Merrick Garland, FBI Director Christopher Wray, Secretary of State Antony Blinken, Postmaster General Louis Dejoy, Acting Administrator of the Federal Aviation Administration Billy Nolen, and Secretary of Defense Lloyd Austin"). To the extent that Plaintiff responds to Defendants' argument on this point at all, he appears to assert in conclusory fashion that "it is premature and requires discovery to determine whether some of the individuals should be dismissed simply because they can manipulate the administrative review process to evade review by claiming mootness." Pl's Opp. at 7.

It is entirely unclear what Plaintiff means to suggest by asserting that these defendants can somehow "manipulate" an unspecified "administrative review process." If he is suggesting that the non-TSA defendants can somehow interfere with the DHS TRIP administrative redress process (which is already concluded, in any event), Plaintiff has no basis for this assertion. In any event, he has the issue exactly backwards: it is Plaintiff's burden to establish the existence of subject matter jurisdiction, *see Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008), and Plaintiff's burden to establish injury-in-fact for standing purposes traceable to specific defendants.

7

*Cf. DeBrew v. Atwood*, 244 F. Supp. 3d 123, 131 (D.D.C. 2017) ("plaintiff's amended complaint supplies no more than 'a naked assertion' of the individual defendants' supposed participation in the events giving rise to the constitutional claims.") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Plaintiff does not cite to any legal authority for his apparent argument that he should be entitled to discovery so as to prove specific individual defendants' involvement in causing him injury based on nothing more than their "position of authority," *see* Opp. at 7, and none exists.  These Defendants should be dismissed.

    **II.    PLAINTIFF'S EFFORTS TO EVADE THE JURISDICTIONAL CHANNELING PROVISION OF 49 U.S.C. § 46110 ARE UNCLEAR AND UNPERSUASIVE**

Section 46110 provides for exclusive jurisdiction in the courts of appeals to review an "order" issued "in whole or in part" by TSA.  49 U.S.C. § 46110(a), (c).  Plaintiff's effort to circumvent the statutory channeling provision of § 46110 fails.  He argues—without any authority or support—that it is only a "claim for money damages for retrospective relief" that "must be taken to the appellate court." Opp. at 7.  That of course makes no sense because, as Plaintiff concedes, *see* Opp. at 2 fn i (footnote appears on page 11 of brief as an endnote), as a general matter "TSA itself cannot be sued for money damages on sovereign immunity grounds." *See also Lane v. Pena*, 518 U.S. 187, 192 (1996) (noting that "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text" and "[t]o sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims").  There would thus be no reason to have a statute channeling only the category of claims that were *unavailable as a matter of law* into one particular court. And neither § 46110 nor the ample case law imposes any restriction on the types of claims that are exclusively channeled into the courts of appeals: rather, the relevant inquiry is whether the

8

claims, regardless of how they are styled and regardless of the relief sought, constitute a challenge to "an order issued by . . . the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration." 49 U.S.C. § 46110.

As explained in Defendants' opening brief, *see* Def.'s Mem. at 17-20, the D.C. Circuit has instructed that "order" in Section 46110 be "read expansively." *Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 598 (D.C. Cir. 2007) (quoting *City of Dania Beach v. FAA*, 485 F.3d 1181, 1187 (D.C. Cir. 2007)). An agency disposition is a reviewable "order" under Section 46110 if it "mark[s] the consummation of the agency's decisionmaking process and determine[s] rights or obligations or give[s] rise to legal consequences." *Id.*; *see Blitz v. Napolitano*, 700 F.3d 733, 740 (4th Cir. 2012) ("[F]or an order to be subject to review in a court of appeals, it must represent the final disposition of the matter it addresses.") (internal citation omitted). This includes any challenge to a TSA order that resolves Plaintiff's placement on TSA's Deny Boarding List, and any challenge to the adequacy of the procedures Plaintiff received through DHS TRIP to contest that placement. Because the final determination letter Plaintiff received is such an order that resolves these challenges, it is subject to the requirements of Section 46110, and is subject to review only in a Court of Appeals. This final determination letter constitutes TSA's "definitive statement," *Gilmore v. Gonzales*, 435 F.3d. 1125, 1132 (9th Cir. 2006), and "final disposition," *Blitz*, 700 F.3d at 740, of Plaintiff's DHS TRIP inquiry.

Plaintiff's nonsensical argument that the court here "would still have jurisdiction because the plaintiff named non-TSA employees in this complaint," Opp. at 7, is undermined by the very case he cites in support of that proposition, *see Kashem v. Barr*, 941 F.3d 358 (9th Cir. 2019). In that case, the Plaintiff sued a number of official capacity defendants outside of TSA, and the Ninth

9

Circuit held that the district court lacked jurisdiction under § 46110 to consider challenges to TSA's redress determinations to maintain individuals on the No Fly List. *See Kashem*, 941 F.3d at 367, 391 ("we hold that § 46110 grants the courts of appeals, rather than the district courts, exclusive jurisdiction over the plaintiffs' substantive due process claims . . . the plaintiffs are free to assert their substantive challenges to their inclusion on the No Fly List by filing a petition for review in an appropriate court of appeals under § 46110."). *Kashem*, like other case law surveyed by Defendants in their opening brief, demonstrates that Plaintiff's claims are not properly before this court and may only be brought in the courts of appeals.

### III. TO THE EXTENT PLAINTIFF ENGAGES WITH THE MERITS OF HIS CLAIMS, HIS ARGUMENTS ARE MERITLESS

Given the threshold jurisdictional problems with Plaintiff's Amended Complaint, the Court need not reach any of the merits issues in the case. To the extent the Court finds that it has jurisdiction over this dispute, Plaintiff's arguments in his opposition on the merits of his claims are cursory and confusing. Defendants therefore reiterate and incorporate the arguments made in their opening brief. *See* Def's Mem. at 21-41. However, two brief responses are warranted.

*First*, Plaintiff appears to concede that "the right [to] air travel domestically is not a fundamental right," but adds that "just why that is so remains a mystery." Opp. at 8. Of course, because he must allege the deprivation of a fundamental right in order to state a due process claim, *see Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999), that concession necessarily defeats his claim. In any event, the rule of law he objects to is a "mystery" apparently only to him, as courts evaluating this issue have broadly held that there is no constitutional right to air travel. *See Town of Southold v. Town of East Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (holding that there is no constitutional right to the most convenient form of travel); *Gilmore*, 435 F.3d at 1137 (holding that there is no "right to travel by airplane"); *Miller v. Reed*, 176 F.3d 1202, 1205 (9th Cir. 1999)

10

(holding there is no "right to drive" and that "burdens on a single mode of transportation do not implicate the right to interstate travel"); *Cramer v. Skinner*, 931 F.2d 1020, 1031 (5th Cir. 1991) (holding that "travelers do not have a constitutional right to the most convenient form of travel"); *cf. Elhady*, 993 F.3d at 222 ("Many courts have held that individuals do not have a protected liberty interest to travel via a particular mode of transportation."). Plaintiff's Due Process Claim should be dismissed.

*Second*, with respect to the First Amendment claims, Plaintiff simply asserts that *Brandenburg v. Ohio*, 395 U.S. 44 (1969) (incitement), and *Virginia v. Black*, 538 U.S. 343 (2003) (true threats), "defeat the very purpose for which they are recited" by Defendants. Opp. at 5. But Plaintiff fails to explain how that is so. He also argues, again without any support, that "there is no universe of facts in which Mr. Fuentes speech could be deemed a true threat." Opp. at 6. Because these are conclusory arguments without any support, the court should simply disregard them. *See Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived."). Defendants refer the court to the arguments and authorities in their opening brief in support of their Motion to Dismiss these claims, should the court reach them. *See* Def.'s Mem. at 30-41.

## CONCLUSION

For the foregoing reasons, and those set forth in Defendants' opening brief, the Court should grant Official Capacity Defendants' motion and dismiss the Amended Complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6).

Dated: September 23, 2022

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch

/s/ Alexander N. Ely
ALEXANDER N. ELY
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St NW
Washington, DC 20530
Tel: (202) 616-8244

*Counsel for Official Capacity Defendants*

### CERTIFICATE OF SERVICE

I certify that on September 23, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent e-mail notification of such filing to all CM/ECF participants.

/s/ Alexander N. Ely
Alexander N. Ely

*Counsel for Official Capacity Defendants*