SENSITIVE SECURITY INFORMATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NICHOLAS FUENTES, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:21-cv-3106 (APM) |
| JOSEPH R. BIDEN, JR., *et al.*, | ) |
| Defendants. | ) |

**DECLARATION OF RUSSELL VIECO**

I, Russell Vieco, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.  I am the Acting Executive Director for Intelligence within the Intelligence & Analysis Office at the Transportation Security Administration (TSA), a component agency of the U.S. Department of Homeland Security. I have held this position since January 2022. The statements made within this Declaration are based upon my personal knowledge and information made available to me in my official capacity.

2.  The purpose of this Declaration is to provide the Court with information relevant to this Court's jurisdiction concerning TSA Watch Lists and their application to Plaintiff Nicholas Fuentes. TSA maintains a Deny Boarding List, which results in denial of boarding, and an Enhanced Screening List, which results in enhanced security screening prior to boarding.[1]

---

[1] TSA may designate passengers for enhanced screening for a variety of reasons, including random selection, inclusion on the Enhanced Screening List, or for other reasons. In the case of an individual requiring enhanced security screening, the aircraft operator applies a "SSSS" marking on the boarding pass to signify that enhanced screening is required. The

*WARNING:* This record contains Sensitive Security Information that is controlled under 49 CFR parts 15 and 1520. No part of this record may be disclosed to persons without a "need to know", as defined in 49 CFR parts 15 and 1520, except with the written permission of the Administrator of the Transportation Security Administration or the Secretary of Transportation. Unauthorized release may result in civil penalty or other action. For U.S. government agencies, public disclosure is governed by 5 U.S.C. 552 and 49 CFR parts 15 and 1520.

# SENSITIVE SECURITY INFORMATION

*Fuentes's Placement on the Deny Boarding List*

3. In early January 2021, after learning that Plaintiff Nicholas Fuentes was suspected of having links to the January 6 riot and attack at the U.S. Capitol and in light of ongoing threats of violence to the National Capitol Region, TSA conducted open source research on Fuentes. TSA discovered videos, dated January 4, 2021, in which Fuentes threatened to harm flight attendants by apparent suffocation using a mask, and/or shooting.[2]

4. In one video, Fuentes pretended to discuss a hypothetical interaction with a flight attendant telling him to wear a face mask while onboard an aircraft. He said he would follow the flight attendant into the parking lot after landing and "put a mask on [the flight attendant] that covers [his or her] mouth and nose." Fuentes then gestured as though he were forcefully placing something over another person's face.

5. In a separate video, Fuentes discussed going into a flight attendant school to "shake everyone's hand." He stated, "don't come to flight attendant school tomorrow, . . . I'm coming." "I am going to open the door and everyone is going to [say] AHHHH." He further stated, "You, you thought you could hide in the stall, I'm going to shake your hand too . . . through the stall door. You think a stall door is going to stop me from shaking your hand?" TSA interpreted Fuentes's statements about "shaking hands" as a euphemism for shooting individuals.

---

notation applies to all passengers designated for enhanced screening, including individuals designated by random selection or for other reasons.

[2] I understand true and correct copies of these videos were included as exhibits to Defendants' Motion to Dismiss.

*WARNING:* This record contains Sensitive Security Information that is controlled under 49 CFR parts 15 and 1520. No part of this record may be disclosed to persons without a "need to know", as defined in 49 CFR parts 15 and 1520, except with the written permission of the Administrator of the Transportation Security Administration or the Secretary of Transportation. Unauthorized release may result in civil penalty or other action. For U.S. government agencies, public disclosure is governed by 5 U.S.C. 552 and 49 CFR parts 15 and 1520.

**SENSITIVE SECURITY INFORMATION**

6.      Fuentes posted these videos on his DLive broadcast "America First."  DLive is a livestreaming platform that is accessed by hundreds of thousands of viewers.  At that time and throughout 2021 and early 2022, there was an exceptionally elevated rate of instances of interference with flight crews on the part of unruly travelers, including by violent means, and including cases related to mask-wearing requirements.

7.      Fuentes's threats appeared directly related to flight attendants enforcing the then-air carrier requirement that passengers wear masks onboard commercial aircraft to combat the spread of COVID-19, which later became a federal requirement.

8.      TSA placed Fuentes on TSA's Deny Boarding List on January 12, 2021, based on these videos and the totality of available information.  The Deny Boarding List is a TSA Watch List maintained by TSA that results in denial of boarding.[3]

9.      In making this determination, TSA considered Fuentes's comments in the videos making threats toward flight attendants stating that he was joking.  Despite his comments that he was joking, TSA determined that Fuentes warranted placement on TSA's Deny Boarding List because of the specific, graphic and violent nature of his threats directed toward flight attendants, which contributed to TSA's assessment that he intended to convey a threat by making these statements and was likely to incite or produce such imminent lawless action.  I note that, during a subsequent review of Fuentes' Deny Boarding List placement when he attempted to fly in late April 2021, TSA discovered an online article from National Public Radio related to Fuentes

---

[3] TSA maintains watch lists based on its own analysis of information indicating that individuals may pose a threat to civil aviation or national security.

*WARNING:* **This record contains Sensitive Security Information that is controlled under 49 CFR parts 15 and 1520.  No part of this record may be disclosed to persons without a "need to know", as defined in 49 CFR parts 15 and 1520, except with the written permission of the Administrator of the Transportation Security Administration or the Secretary of Transportation.  Unauthorized release may result in civil penalty or other action.  For U.S. government agencies, public disclosure is governed by 5 U.S.C. 552 and 49 CFR parts 15 and 1520.**

**SENSITIVE SECURITY INFORMATION**

titled, "How Extremists Like The Proud Boys Weaponize Irony And Memes To Spread Hate." The article quoted Fuentes as stating that "[i]rony is so important for giving a lot of cover and plausible deniability."[4] The article further stated that "Fuentes has said himself that he uses irony and 'jokes' to communicate his message without consequences."

10. Fuentes booked travel on multiple flights in April and July 2021, prompting TSA to conduct encounter reviews, as mentioned in Paragraph 9 above, considering whether Fuentes properly remained on the List in advance of scheduled travel. TSA maintained Fuentes's placement on the Deny Boarding List for these flights. TSA's determination was based on the totality of available information, including Fuentes's specific and violent threats against flight attendants and in consideration of the sharp rise in in-flight disturbances.

*Fuentes's Removal from the Deny Boarding List*

11. Following TSA's receipt of an inquiry Fuentes submitted to the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP), and awareness of a booking of upcoming travel, TSA again conducted a review on November 2, 2021, of whether Fuentes properly remained on the Deny Boarding List.

12. TSA reviewed available information to determine if Fuentes was making continuing threats of violence relevant to TSA's mission to protect transportation security, and found no statements similar to his threats to kill flight attendants made on or about January 4, 2021. TSA also reviewed his travel history for flights for which he was denied boarding at the

---

[4] The article is available here: https://www.npr.org/2021/04/26/990274685/how-extremists-weaponize-irony-to-spread-hate) (last visited June 15, 2022).

***WARNING:*** **This record contains Sensitive Security Information that is controlled under 49 CFR parts 15 and 1520. No part of this record may be disclosed to persons without a "need to know", as defined in 49 CFR parts 15 and 1520, except with the written permission of the Administrator of the Transportation Security Administration or the Secretary of Transportation. Unauthorized release may result in civil penalty or other action. For U.S. government agencies, public disclosure is governed by 5 U.S.C. 552 and 49 CFR parts 15 and 1520.**

**SENSITIVE SECURITY INFORMATION**

airport.  TSA considered that during his multiple interactions with airline personnel while attempting to fly, Fuentes did not engage in violence and did not appear to violate federal security requirements.

13. TSA determined, based on that review, that Fuentes no longer posed an imminent threat warranting inclusion on the Deny Boarding List, and TSA removed Fuentes from the Deny Boarding List on November 2, 2021.

14. TSA will not place Fuentes back on TSA's Deny Boarding List based on the currently available information.

15. [redacted]

16. [redacted]

17. [redacted]

***WARNING:*** **This record contains Sensitive Security Information that is controlled under 49 CFR parts 15 and 1520.  No part of this record may be disclosed to persons without a "need to know", as defined in 49 CFR parts 15 and 1520, except with the written permission of the Administrator of the Transportation Security Administration or the Secretary of Transportation.  Unauthorized release may result in civil penalty or other action.  For U.S. government agencies, public disclosure is governed by 5 U.S.C. 552 and 49 CFR parts 15 and 1520.**

**SENSITIVE SECURITY INFORMATION**

18. ███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████████████████████

19.     Following calls with air carriers concerning Fuentes's travel bookings,[5] TSA authorized air carriers to issue boarding passes ████████████████████████████ ██████.

20.     I understand Fuentes alleges that TSA denied him boarding for his March 19, 2022 reservation from Chicago (Midway) to Grand Rapids, MI.  However, Fuentes was completely removed from TSA's Deny Boarding List on November 2, 2021, ████████████ ████████████████████  Accordingly, TSA authorized Southwest Airlines to issue a boarding pass to Fuentes that would have permitted him to fly ████████████████████████████.  However, Southwest had a technical issue with printing the boarding pass, as demonstrated by the transcript of TSA's conversation with Southwest Airlines regarding Fuentes's March 19, 2022 travel.  A true and correct copy of the transcript is attached hereto as Exhibit A.[6]

---

[6] This transcript contains redacted information that constitutes Sensitive Security Information and third-party privacy information.  Sensitive Security Information is further described below.  The third-party privacy information consists of a low-level Southwest Airline employee's name.  Releasing that name would impair the employee's privacy interests and could result in harassment.

**WARNING: This record contains Sensitive Security Information that is controlled under 49 CFR parts 15 and 1520.  No part of this record may be disclosed to persons without a "need to know", as defined in 49 CFR parts 15 and 1520, except with the written permission of the Administrator of the Transportation Security Administration or the Secretary of Transportation.  Unauthorized release may result in civil penalty or other action.  For U.S. government agencies, public disclosure is governed by 5 U.S.C. 552 and 49 CFR parts 15 and 1520.**

**SENSITIVE SECURITY INFORMATION**

███████████████████████

21.  ████████████████████████████████

████████████████████████████████

22.  The federal requirement to wear face masks onboard an aircraft ended on April 18, 2022.[7]

23.  ████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████

24.  ████████████████████████████████

████████████████████████

*Disclosure of Redacted Information Would Be Detrimental to Transportation Security*

25.  This Declaration contains certain information that constitutes Sensitive Security Information pursuant to 49 U.S.C. §114(r) and 49 C.F.R. part 1520, as TSA has determined that its disclosure would be detrimental to transportation security.  Section 1520.5(b)(9)(ii) makes clear that "SSI includes information and sources of information used by a passenger or property screening program or system, including an automated screening system.  This is intended to cover information used by a computerized passenger screening system, including lists of

---

[7] Press Release, TSA, Statement Regarding Face Mask Use on Public Transportation (Apr. 18, 2022), https://go.usa.gov/xuSpN.

*WARNING:* **This record contains Sensitive Security Information that is controlled under 49 CFR parts 15 and 1520.  No part of this record may be disclosed to persons without a "need to know", as defined in 49 CFR parts 15 and 1520, except with the written permission of the Administrator of the Transportation Security Administration or the Secretary of Transportation.  Unauthorized release may result in civil penalty or other action.  For U.S. government agencies, public disclosure is governed by 5 U.S.C. 552 and 49 CFR parts 15 and 1520.**

**SENSITIVE SECURITY INFORMATION**

individuals identified as threats to transportation or national security." *See also* Protection of Sensitive Security Information, 69 Fed. Reg. 28,066, 28,071 (May 18, 2004) (interim final rule adding 49 C.F.R. § 1520.5(b)(9)(ii)) ("This is intended to cover . . . lists of individuals identified as threats to transportation or national security."). Disclosure of SSI is limited to covered persons who have a need to know to carry out their official duties and unauthorized disclosure of SSI is grounds for a civil penalty and other enforcement or corrective action.

26. I understand in closing out Fuentes's redress inquiry, DHS TRIP did not disclose whether he was on or off of the Enhanced Screening List. In order to ensure the effectiveness of TSA's security measures, an individual's status on or off the Enhanced Screening List is not disclosed, whether the person is required to undergo enhanced screening or not.[8] An individual's status on or off the Enhanced Screening List constitutes Sensitive Security Information (SSI) pursuant to 49 U.S.C. § 114(r) and 49 C.F.R. § 1520.5(b)(9)(ii).

---

[8] An individual's status on or off the Deny Boarding List is also generally not disclosed. In certain limited circumstances, a U.S. citizen or lawful permanent resident who is denied boarding may learn of his or her status on the Deny Boarding List, after filing an inquiry with DHS TRIP about the denial of boarding. In such circumstances, Deny Boarding List status is not SSI.

*WARNING:* **This record contains Sensitive Security Information that is controlled under 49 CFR parts 15 and 1520. No part of this record may be disclosed to persons without a "need to know", as defined in 49 CFR parts 15 and 1520, except with the written permission of the Administrator of the Transportation Security Administration or the Secretary of Transportation. Unauthorized release may result in civil penalty or other action. For U.S. government agencies, public disclosure is governed by 5 U.S.C. 552 and 49 CFR parts 15 and 1520.**

**SENSITIVE SECURITY INFORMATION**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:   September 23, 2022
                     Springfield, VA

*Russell E. Vieco*
RUSSELL E. VIECO
Acting Executive Director for Intelligence
and Analysis
Transportation Security Administration

*WARNING:* **This record contains Sensitive Security Information that is controlled under 49 CFR parts 15 and 1520.  No part of this record may be disclosed to persons without a "need to know", as defined in 49 CFR parts 15 and 1520, except with the written permission of the Administrator of the Transportation Security Administration or the Secretary of Transportation.  Unauthorized release may result in civil penalty or other action.  For U.S. government agencies, public disclosure is governed by 5 U.S.C. 552 and 49 CFR parts 15 and 1520.**

# Exhibit A

SA = TSA Operator
AO = Southwest Airlines check in agent

3/19/2022

2OLNBD

Resolution Call at 1316 ET on 03/19/2022

SA:  Thank you for calling the National Transportation Center, my name is ▇▇▇, may I have your name

AO:  ▇▇▇

SA:  May I have a contact number

AO: 7738843035

SA: Three letter airport code

AO: MDW

SA:  Your airline code.

AO: Wn

SA: May I have your passenger PNR.

AO:  2OLNBD

SA:  Passenger at the MDW tkt counter for flight 3369.  AO yes.,

SA:  Can you spell the Passenger's name

AO: Fuentes, Nicholas.

SA: what is the passenger's DOB and Gender

AO: ▇▇▇, Male.

SA:  What type of ID is he checking in with

AO:  Its' a DL.

SA: And the license number

AO: ▇▇▇

SA What state issued the DLs?

AO: IL

SA: Is the passenger traveling with anyone?

AO:  No (AO asking the passenger if he is traveling with anyone).

SA: Is he checking in any bags

AO:  No

SA = TSA Operator
AO = Southwest Airlines check in agent

SA: No firearms

AO: Correct

SA: Is he flying on any employee travel benefits.

AO: No

SA: ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒.

**On hold**
**05:00 call resumes:**

SA:  Hello ▒▒▒ can I have the issue and expiration of the DLs.?

AO:  Issue ▒▒▒▒▒   Exp ▒▒▒▒▒

SA: Thank you I'm going to place you back on hold

**Call on Hold**
**10:56 call resumes:**

SA: ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒

AO:  I'm trying to check him in.

SA:  Don't re-swipe or put anything else in, you should be able to hit print print.

AO:  I mean its not letting me check him in still.

AO: **12:14**   It's letting me do the MDW to GRR but not the return flight GRR to MDW**.**

SA:  Right, he has to checkin again for his return flight.

AO:  Its' not like accepting it.

SA:  So he will only be able to get his BP from MDW to GRR.

AO:  It won't let me print his boarding pass at all.

SA:  one moment:

SA: ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒

SA = TSA Operator
AO = Southwest Airlines check in agent

AO: I'm unable to print a boarding pass at all.  We are not able to check him in at all.

SA: ▓▓▓ you will have to contact your IT department about this issue.

AO:  OK-thank you.

SA: have a good day

AO: ok.